# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

RACHEL LYNN MAGLIULO ET AL       CIVIL ACTION NO. 3:21-cv-02304

VERSUS       JUDGE DOUGHTY

EDWARD VIA COLLEGE OF       MAG. JUDGE KAYLE McCLUSKY
OSTEOPATHIC MEDICINE


**EDWARD VIA COLLEGE OF OSTEOPATHIC MEDICINE'S (VCOM)
RESPONSE IN OPPOSITION TO PLAINTIFFS' FIRST AMENDED COMPLAINT
FOR TEMPORARY RESTRAINING ORDER, PRELIMANARY INJUNCTION
AND PERMANENT INJUCTION**

**TABLE OF CONTENTS**

I.      Introduction ................................................................................................ 1

II.     Plaintiffs ..................................................................................................... 5

III.    Procedure .................................................................................................... 6

IV.     Standing/Jurisdiction ................................................................................. 6

V.      Preliminary Injunction Standard ............................................................. 13

        1.  Plaintiffs have not shown a Substantial Likelihood of Success ...................... 13

        2.  Irreparable Harm ...................................................................................... 16

VI.     Conclusion ................................................................................................ 17

# TABLE OF AUTHORITIES

## <u>FEDERAL CASES</u>

*Adams v. City of Chicago*,
    135 F.3d 1150, 1154 (7th Cir. 1998)  .............................................................. 17

*Bayou Liberty Ass'n v. United States Army Corps of Eng'rs*,
    217 F.3d 39 (5th Circuit July 19, 2000)............................................................ 9

*Blanco v. Burton,*
    2006 U.S. Dist. LEXIS 56533 (E.D. La. August 14, 2006)............................... 6

*Bruesewitz v. Wyeth LLC,*
    562 U.S. 223, 226 131 S. Ct. 1068, 179 L. Ed. 2d 1 (2011)  .......................... 14

*Caterpillar, Inc. v. Williams,*
    482 U.S. 386, 398-99 (1987)  .......................................................................... 16

*Doe v. Duncanville Indep. Sch. Dist.,*
    994 F.2d 160, 163 (5th Cir. 1993)  .................................................................. 13

*Duthie v. Matria Healthcare, Inc.,*
    543 F. Supp.2d 958, 960 (N.D. Ill. 2008)  ....................................................... 16

*Geneva Intern. Corp. v. Petrof, SPOL, S.R.O.,*
    529 F.Supp.2d 932, 940 (N.D. Ill. 2007)  ........................................................ 17

*Graham v. Med. Mut. of Ohio,*
    130 F.3d 293, 296 (7th Cir. 1997)  .................................................................. 16

*Hodges v. Bd. Of Supervisors*,
    2020 U.S. Dist. LEXIS 153949, 7 (E.D. La. Aug. 25, 2020)  .......................... 16

*Holland Am. Ins. Co. v. Succession of Roy,*
    777 F.2d 992, 997 (5th Cir. 1985)  .................................................................. 13

*Ingebretsen v. Jackson Pub. Sch. Dist.,*
    88 F.3d 274, 278 (5th Cir. 1996)  .................................................................... 13

*Jacobsen v. Commonwealth of Massachusetts,*
    197 U.S. 11, 30-31 (1905)  .............................................................................. 14

*Kelly v. ImagineIF Library Entity,*
    2021 U.S. Dist. LEXIS 111958, 8 (D. Mont. June 15, 2021)  ......................... 16

*Klaassen v. Trs. of Ind. Univ.,*
    2021 U.S. Dist. LEXIS 133300, 2021 WL 3073926 (N.D. Ind. July 18, 2021)
    ..................................................................................................... 8, 9, 11, 14, 15

*Mississippi Power & Light Co. v. United Gas Pipe Line Co.,*
    760 F.2d 618, 621 (5th Cir. 1985) ................................................................ 13

*Nikolao v. Lyon,*
    875 F.3d 310, 316 (6th Cir. 2017) ................................................................ 11

*Phillips v. City of New York,*
    775 F.3d 538, 542-43 (2nd Cir. 2015) ..................................................... 11, 14

*Phillips v. Marsh,*
    687 F.2d 620, 622 (2nd Cir. 1982) ............................................................... 16

*Prince v. Massachusetts,*
    321 U.S. 158, 166-67 (1944) ........................................................................ 14

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016) ......................................... 6

*Uzuegbunam v. Preczewski,*
    141 S. Ct. 792, 797, 209 L. Ed. 2d 94 (2021) ............................................... 6

*Valley v. Rapides Parish Sch. Bd.,*
    118 F.3d 1047, 1051 (5th Cir. 1997) ............................................................ 13

*Whitfield v. Cuyahoga Cnty. Pub. Library Found.,*
    2021 U.S.Dist. LEXIS 92944, 4 (N.D. Ohio May 17, 2021) .......................... 16

*Zucht v. King,*
    260 U.S. 174, 176-77 (1922) ........................................................................ 14

<u>FEDERAL STATUTE</u>

U.S. Const. Art. III § 2 ................................................................................... 6

U.S. Const. Fourteenth Amendment ............................................................. 16

I.      **Introduction**

VCOM published its History of COVID-19 Response (March 12 to June 22, 2020) and

Official Plans for Operation (July 2020 to June 2021 Academic Year Under COVID Restrictions

on March 12, 2020 (Exhibit No. 1).  The 106 page exhaustive publication set forth VCOM's

policies and procedures for employees and students returning to campus after the outbreak of

the pandemic.  It set forth plans for repopulating the campus, COVID testing requirements for

students and employees and an action plan for students and employees who might become ill on

campus or test positive after returning to campus.  It created COVID-19 committees and campus

response teams for its four osteopathic medical school campuses located in Virginia, Alabama,

South Carolina and (Monroe) Louisiana.  It explained plans the institution developed to respond

in the event of COVID-19 cases and potential COVID-19 outbreaks on its campuses.  It further

outlined strategies VCOM set in motion to enable students and employees to cope with the

mental stress associated with these trying times.  In short, VICOM's official plans for operations

espoused the institution's goal to return as much normalcy to the campus as it could safely

accomplish consistent with comprehensive guidelines issued by the Centers for Disease Control

to keep its students and communities safe.

Unfortunately, while our nation moved to Phase 3 guidelines, public health data

suggested COVID-19 continued as a nationwide threat.  New strains such as the Delta variation

brought about more concerns about the rising numbers of COVID-19 patients in some of the

states where VCOM is located, particularly (Monroe) Louisiana (which has experienced a

considerable rise in infected patients)[1].  In response, VCOM's Dean Ray Morrison sent an email

---

[1] Plaintiffs maintain in paragraph 13 of their August 5, 2021, complaint that VCOM's stated goal for instituting its
vaccination mandate is "not based in fact and overlooks the reality that the large, local medical facilities" such as St.
Francis Medical Center, do not have a mandatory vaccination requirement for the healthcare provider "who are
practicing at their facilities and who are providing direct medical care to 'vulnerable patients.'" However, on August
2, 2021, The Franciscan Missionaries of Our Lady Health System in Baton Rouge announced it would require the

1

to the students dated June 30, 2021, titled "IMPORTANT MESSAGE FROM THE DEAN." The email stated "[W]e are requiring all VCOM students to receive a full Covid-19 vaccination for matriculation this fall.  If you have not been vaccinated, you will need to receive your first vaccine within the next week.  If you cannot access a Covid-19 vaccine, let us know and we will assist you in identifying a site.  Again, this is required as you will have patient contact in year one and like other vaccines that you are required to obtain prior to matriculation, this is necessary for your safety and patient safety.  Requests for religious and medical exemptions will be heard on an individualized basis with appropriate verifications (proof)."  (Exhibit No. 3).  VCOM supplemented the Dean's email, and its earlier COVID-19 response and operations plans, by way of an eleven (11) page *Guidance For VCOM Students On Campus And In Clinical Settings Under COVID-19 Conditions Beginning 07-16-2021* (Exhibit No. 4).  The publication set forth that students on all campuses were required to have a COVID-19 vaccine to attend all classes and all clinical environments.  Citing the requirement for vaccination as the same as other required immunizations students shall receive to enter medical school and to be involved in patient care, the publication emphasized that the vaccination requirement was for the protection of the patient and protection of the student.  It further read "Although the COVID-19 vaccine is approved under emergency conditions, the number of persons receiving the vaccine and the relatively low number of complications have far exceeded numbers in prior vaccine studies.  However, the final determination was to be in January 2022, which is now estimated to be released in fall of 2021."  Notwithstanding this mandatory vaccination requirement, VCOM made clear that "students unable to obtain the vaccination for medical or religious reasons must

---

"COVID-19 vaccine for "all team members, employed providers, residents, students in clinical rotations, contract staff and volunteers." Franciscan Missionaries of Our Lady Health System is the parent organization to St. Francis Medical Center in Monroe (Exhibit No. 2).

2

submit a request for accommodations to the COVID-19 officer and provide appropriate documentation."  Page six (6), paragraph thirteen (13) informed the medical student that a formal review process would follow to determine what accommodations could be made.  For those medical students who received exemption from vaccination, the medical school's policy imposed additional safety requirements (detailed below).

The COVID-19 Committee ("Committee") formally convened August 6, 2021 to take up all medical student exemption requests, specifically the plaintiffs' religious exemption requests.  The Committee formally approved the three plaintiffs' religious exemption requests. Stated differently, VCOM has approved Magliulo's, Willis' and Hall's religious exemption requests and transmitted an email today (August 9, 2021) to each medical student informing them of the approval.  (Exhibit Nos. 5-7).  The letters sent to plaintiffs read as follows:

> The COVID-19 Committee has taken up your request for a religious exemption from the VCOM policy requiring a COVID-19 vaccination. The Committee has approved your exemption upon compliance with the following listed accommodations.
>
> Additionally, the exemption is time-limited until one or more of the vaccines currently under Emergency Use Authorization receives full and final approval for use by the US Food and Drug Administration. At that time, you will need to be vaccinated or to apply again for an exemption as may be allowed by law.
>
> The Committee noted that many of the students were not well educated on what was factual regarding the vaccines and their risks. Instead, several students were afraid of what is a very rare risk and is certainly much less risk than having the virus. The misinformation was also seen in many of the religious exemption requests which identified using fetal cells in the manufacturing of the vaccine, which is not the case, and were used in testing the same as the MMR. It was noted that the moral objection regarding the vaccine had been made by many faiths collectively, and this is a part of the module, so students will be able to make an informed decision based on fact.
>
> The Committee determined to grant your appeal for the current time, and made the following accommodations in order for you to continue enrollment at VCOM:
>
> 1.      You are to complete the Covid-19 module and the Covid-19 vaccination modules and pass those portions in your Microbiology or Immunology Course by the end of the block.

2.    *You must correctly wear an approved mask at all times on campus, except when eating or drinking. When eating or drinking you must be sure to six-foot distance from others. (Failure to wear a mask will result in suspension).*

3.    *You must use the MyHealthTracer.com application daily, Monday through Friday prior to coming to morning classes. (Failure to complete the MyHealthTracer.com will result in suspension).*

4.    *You must not come to campus (or any VCOM sponsored event) if you are ill or have symptoms of an illness and these must be reported on MyHealthTracer.com. You will also need to notify the Covid Officer (the Associate Dean for Student Services for students in years 1 and 2 and the Associate Dean for Clinical Affairs for students in years 3 and 4). You must have a test for Covid19 if you are ill with any symptoms common with Covid-19 (upper respiratory or gastrointestinal). If you test positive, you must follow the Covid-19 guidance for an appropriate 10-day self-quarantine and a negative test prior to returning.*

5.    *You must read and follow the additional guidance set forth by the CDC regarding safety protocols for institutions of higher education campuses for unvaccinated individuals (and where there is a mix of vaccinated and unvaccinated individuals). These protocols are in addition to the other accommodations set forth herein.*

6.    *You may attend the Principle of Primary Care labs and OMM labs; however, you must identify a student who agrees to work with a student who is not vaccinated, as the labs involve touching and close contact with another student. The Course Director may assist you if you have difficulty in identifying an individual as a laboratory partner.*

7.    *You may complete all educational requirements for your academic year <u>except</u> those activities where you are acting as a medical care provider including, but not limited to, Standardized Patient Examinations, and Early Clinical Experiences, which will be deferred until the threat of Covid-19 has subsided or the vaccine is approved. This is to protect the patients cared for, a safety consideration that must be considered above those who are performing the examinations or any treatment. These requirements may be deferred through the end of the academic year.*

*Other options include:*

8.    *You may also choose to defer your enrollment for a period of one year when the vaccine will have approval and/or the risk from Covid-19 is mitigated.*

9.    *You may also choose to not attend VCOM.*

10.   *You are hereby notified that if you choose to continue to attend VCOM, and do not abide by the above accommodations, you will be referred to the Professional and Ethical Standards Board, which could result in dismissal. If you have questions about any of the above accommodations please contact the appropriate COVID-19 Officer on your campus.*

*Sincerely,*

*Randy Schuller JD, VP for VCOM Institutional Policy and Administrative Law*
*Representing the VCOM Covid-19 Committee*

4

To be sure, VCOM has not forced its students to take the vaccination against their will. To the contrary, VCOM has granted religious exemptions to the plaintiffs.  And should they choose to reject the seven conditions of the accommodation, the medical students can choose to: (1) not attend VCOM; (2) defer their enrollment for one year; or (3) forgo a medical education.

## II.    Plaintiffs

This August 3, 2021, action for injunctive relief originally included as plaintiff the State of Louisiana through Attorney General Jeff Landry who filed suit for the so-called purpose of enforcing, instituting and prosecuting LSA-R.S. 17:170 "in any civil action or proceeding."  Mr. Landry was joined by three additional plaintiffs, namely VCOM students: (1) Rachel Lynn Magliulo (Florida domiciliary); (2) Matthew Shea Willis (Louisiana domiciliary); and (3) Kirsten Willis Hall (Louisiana domiciliary).  However, in the wake of negative publicity, Mr. Landry, and his office, withdrew as plaintiff.  As a corollary, Magliulo, Willis and Hall (Willis & Hall are siblings), filed the instant amended complaint and request for injunctive relief on August 5, 2021.

An incoming first year medical student, Rachel Lynn Magliulo (Magliulo) initially sought a medical exemption to VCOM's COVID-19 vaccination mandate by way of a contradictory June 15, 2021 letter from Mark R. Zohoury, DO which indicated on the one hand that she had an "excellent health history," such that it was "acceptable" for her "not to receive the Covid-19 Vaccine."  Yet, on the other hand due to health concerns that "(she) should not be required to wear a mask."  (Exhibit No. 8).  In response, VCOM's Nathan Kinnard, Associate Dean of Student Affairs and Development, emailed Magliulo on July 9, 2021 informing her that the letter from her doctor failed to "indicate any medical contra-indication to the receiving of the vaccine."  (Exhibit No. 9).  Magliulo also asserted an exemption request to VICOM's vaccination mandate on the basis of her deeply held Christianity beliefs and opposition to abortion, specifically her objection

5

to the use of aborted fetal cell lines used to develop the vaccinations (Exhibit No. 10).

Second year medical student Matthew (Shea) Williams also requested a religious exemption to VCOM's COVID-19 vaccine mandate.  Citing his Christian faith, Shea observed in his July 20, 2021 email to VCOM that soul searching led him to conclude he "must not get the shot, and not wear the mask."  (Exhibit No. 11).

Second year medical student Kirsten Willis (Willis) Hall, sought a religious exemption. She asserted based on her Christianity that she rejected "the covid-19 vaccine and the requirement to wear a mask while on campus." (Exhibit No. 12).

## III.    Procedure

Mr. Landry and the students filed a motion for temporary restraining order, preliminary injunction and permanent injunction on August 3, 2021.  Two days later, on August 5, 2021, Mr. Landry withdrew as plaintiff.  The remaining three medical student plaintiffs filed an amended pleading which asserted a federal complaint to accompany their previously filed petition for preliminary injunction.

## IV.    Jurisdiction

Before considering the preliminary injunction motion, the court must ensure its jurisdiction.  See *Blanco v. Burton*, 2006 U.S. Dist. LEXIS 56533 (E.D. La. August 14, 2006). The United States Constitution confines the federal judiciary's power to "Cases" and "Controversies."  U.S. Const. Art. III § 2.  For a case or controversy to exist, a plaintiff must have standing—an injury, fairly traceable to the defendant's conduct, that the court's decision will likely redress.  *Uzuegbunam v. Preczewski, 141 S. Ct. 792, 797, 209 L. Ed. 2d 94 (2021)*; *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016).

Plaintiffs' amended complaint alleges the court has jurisdiction over plaintiffs' claims,

"because Defendant's actions would delay Plaintiffs' education and, subsequently, their employment as osteopathic doctors by at least one year, Plaintiffs stand to be deprived of more than $75,000 in income."   (First Amended Complaint for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction ("amended complaint") (R.Doc. 8, p.3).

"Defendant's actions", on which plaintiffs' complaint is based, is the "Guidance for VCOM Students on Campus and in Clinical Settings Under COVID-19 Conditions Beginning 7-16-2021" ("COVID policy").   According to plaintiffs, VCOM'S COVID policy mandates plaintiffs "receive a COVID-19 vaccination as a condition of enrollment"  (R.Doc. 8, ¶37, 38, 41, 43), forcing plaintiffs to violate their deeply-held religious beliefs or discontinue their medical education to preserve their religious beliefs. (R.Doc. 8, ¶34).

Yet, in paragraph 19 of the amended complaint, plaintiffs quote VCOM's COVID policy stating "Vaccination is required for patient care for the fall term **unless** a medical condition, religious exemption or other state allowed exemption prohibits vaccination (emphasis added). Thus, plaintiffs acknowledge VCOM's COVID policy allows for a religious exemption to the vaccination requirement, thereby giving plaintiffs options that preserve their religious beliefs, opposed to forcing a choice between receiving the vaccine or discontinuing their medical education.  Contrary to plaintiffs' portrayal of VCOM's COVID policy as mandatory vaccination for enrollment with no exceptions, in actuality, the COVID policy allows for exceptions, which are first mentioned on page one of the policy, stating "VCOM, while requiring vaccination of students and employees for the safety of the classroom and work-place, also recognizes the importance of any person to be able to apply for exemptions for religious, medical or judicially approved reasons…  Exemption forms exist for all students who are requesting not to participate in vaccination."

There is no doubt plaintiffs were well aware of the exemptions to the vaccination requirement, as all three plaintiffs submitted requests for religious exemptions to VCOM prior to August 5, 2021, the date of filing the amended complaint.  Thus, on the date of filing their amended complaint, all plaintiffs had submitted requests for religious exemption to the vaccine requirement, as allowed for by VCOM, and all plaintiffs remained actively enrolled at VCOM.  Accordingly, plaintiffs' own actions in applying for the religious exemption disprove their basis for the court's jurisdiction, as plaintiffs have not been forced to delay their education and subsequently their employment by one year in order to preserve their religious beliefs.  As such, plaintiffs have failed to allege any <u>real</u> injury, damage, or harm they have personally suffered as a result of VCOM's COVID policy that would grant jurisdiction unto this court.  In sum, there is no justiciable controversy because all plaintiffs qualify for the religious exemption to VCOM's COVID policy; thus, there are no constitutional issues before the court.

In the precedential case of *Klaassen v. Trs. of Ind. Univ.*, 2021 U.S. Dist. LEXIS133300, 2021 WL 3073926 (N.D. Ind., July 18, 2021), *aff'd by Klaassen v. Trs. of Ind. Univ*, 2021 U.S. App. LEXIS 22785 (7th Cir. Aug. 2, 2021), the court addressed the requirement that all students at Indiana University must be vaccinated against COVID-19 unless they are exempt for religious or medical reasons.  Exempt students must wear masks and be tested for the disease twice a week. Eight students filed suit against the university requesting the court enter a preliminary injunction, contending these conditions of attendance violated the Due Process Clause of the Constitution's Fourteenth Amendment.  Indiana University raised the issue of standing.  The court noted that of the eight student plaintiffs, six had received an exemption under the university's policy and one qualified so long as she pursued it. That left one student plaintiff who actually faced an unexemptible choice: get vaccinated or cannot attend Indiana University.  The court determined

8

this one student plaintiff had standing—an injury fairly traced to Indiana University's decision to mandate the vaccine and one the court could redress. *Id*. at 36-38.

The *Klaassen* court noted that the court had subject matter jurisdiction under Article III for all plaintiffs so long as one plaintiff had standing (citations omitted).  Thus, the basis for the court's jurisdiction over the preliminary injunction motion was the standing of the one non-exempt plaintiff.  *Id*. at 37.  Moreover, the court stressed it cannot issue a mere advisory opinion.  Article III's "case or controversy" requirement prohibits advisory opinions that do not affect the rights of the parties before the court.  As aptly stated by the *Klaassen* court, the court isn't a law office established for legal advice—the federal judiciary decides cases, not hypothetical outcomes.  *See also Bayou Liberty Ass'n v. United States Army Corps of Eng'rs*, 217 F.3d 393 (5th Circuit July 19, 2000).  If the court's decision doesn't affect a litigant's rights, the aggrieved party is unable to illustrate the redressability component of standing, rendering any judicial decision in the case an impermissible advisory opinion.  *Id*.; *Klaassen*, 2021 U.S. Dist. LEXIS133300 *37.  In short, the *Klaassen* court made clear it could not nor would not decide issues that would not redress the injuries the particular students therein alleged. *Id*. *37-38.

Here, all three plaintiffs requested and qualify for the religious exemption to VCOM's COVID policy; thus, there is no plaintiff herein who actually faces an unexemptible choice: get vaccinated or cannot attend VCOM, as there was in the *Klaassen* matter and on which the court's jurisdiction therein was based.  Accordingly, no plaintiff in the instant matter can illustrate the redressability component of standing, thereby rendering any judicial decision by this court an impermissible advisory opinion.  Because all plaintiffs qualify for religious exemption from VCOM's COVID policy, plaintiffs have not alleged a single injury actually sustained by them, but, rather, all of the injuries alleged are speculative and hypothetical.

9

In the amended complaint, plaintiffs state "<u>If</u> forced to receive the COVID-19 vaccination in violation of their deeply-held religious beliefs, Plaintiffs will suffer the ultimate insult and irreparable harm.  Likewise, <u>if</u> forced to discontinue their medical education to preserve their religious beliefs, Plaintiffs will likewise suffer irreparable harm." (emphasis added) (R.Doc. 8 ¶34).  But plaintiffs have <u>not</u> been forced to receive the vaccination; rather, plaintiffs requested and qualified for the religious exemption allowed by VCOM, and plaintiffs have <u>not</u> been forced to discontinue their medical education to preserve their religious beliefs; rather, plaintiffs have all been granted admissions to VCOM for the Fall 2021 semester.  Thus, not a single plaintiff has actually suffered the injuries on which their amended complaint is based.  As noted above, the federal judiciary decides cases, not hypothetical outcomes.  Accordingly, this court does not have jurisdiction to issue a decision on the hypothetical outcomes set forth by plaintiffs who have no standing before the court.

Furthermore, plaintiffs' complaint is chock full of allegations pre-dating VCOM's current COVID policy (R.Doc. 8 p.3, ¶6, 10, 12, 13, 14, 28); allegations that do not rise to the level of justiciable controversies, as the current COVID policy overrides any prior policies of VCOM establishing pandemic related requirements.  To be sure, we are in the midst of a public health crisis of such magnitude never before seen by the majority of the population.  This pandemic continues to evolve, and thus does the medicine and science surrounding it.  As we are currently experiencing, there are variants, such as the Delta variant, that are proving more virulent and producing horrific consequences for young and old alike.  Thus, there is inarguable medical and scientific uncertainty regarding COVID-19, with facts, figures and data changing on a daily basis. Considering such, VCOM's policies and requirements to best ensure the safety and public health of its campus communities from COVID-19 must remain fluid, evolving along with the virus itself

10

and the medical and scientific research in connection therewith, and VCOM has done just that.

Thus, any claims asserted by plaintiffs based on VCOM's prior COVID policies are not viable, as

the policy in effect as of the date plaintiffs filed the amended complaint and the policy under which

VCOM and all VCOM students are currently operating is the July 16, 2021 policy, which allows

for exemptions from the vaccine mandate.

Moreover, plaintiffs have further options beyond that of the religious exemption, such as

applying for a medical deferral, taking a semester off, attending online or attending another

university, all real, viable options.  As the 7th Circuit aptly stated in its denial of the *Klaassen*

plaintiffs' motion for injunction:

> Vaccination is instead a condition of attending Indiana University.  People who do not want
> to be vaccinated may go elsewhere.  Many universities require vaccination against SARS-
> CoV-2, but many do not.  Plaintiffs have ample educational opportunities.
>
> Each university may decide what is necessary to keep ither students safe in a congregate
> setting.
> ***
>
> If conditions of higher education may include surrendering property [i.e., paying tuition]
> and following instructions about what to read and write, it is hard to see a greater problem
> with medical conditions that help all students remain safe when learning.

*Klaassen*, 2021 U.S. App. LEXIS 22785 *3-5.

Beyond the false claim that VCOM's COVID policy mandates plaintiffs receive a COVID-

19 vaccination as a condition of enrollment at VCOM, plaintiffs further base their request for

injunctive relief on the allegation that VCOM has violated La. R.S. 17:170E, which allows a

student to opt out of a vaccination requirement by submission of a "written dissent".  However,

plaintiffs' own actions have removed the applicability of La. R.S. 17:170E to the instant matter.

As noted above, all three plaintiffs requested a religious exemption to the vaccination requirement,

opposed to employing the "written dissent" option offered under 17:170E.  And VCOM actually

emailed each plaintiff on August 5, 2021 specifically informing each that its committee was scheduled to meet the following day–August 6, 2021–to decide on their exemption requests and, in case of confusion with VCOM's COVID policy, plaintiff could opt out of the vaccination requirement by simply informing VCOM he/she "dissents."  (Exhibit Nos. 13-15).  Nonetheless, all three plaintiffs chose instead to rely on their respective requests for religious exemption, which were all granted.  Accordingly, plaintiffs' claims do not fall under La. R.S. 17:170E, and such statute has no pertinence to the allegations before the court.

VCOM's COVID policy is a neutral rule of general applicability.  It applies to all students, whether religious or not.  It does not discriminate among religions.  Indeed, VCOM has chosen to enable the practice of religion by providing a religious exemption to the vaccination requirement— one that VCOM has granted to plaintiffs herein.  This is consistent with the Constitution.  *See Nikolao v. Lyon*, 875 F.3d 310, 316 (6th Cir. 2017) (religious plaintiff had no constitutional right to an exemption from mandatory vaccination law for public school students, though state provided one); *Phillips v. City of New York*, 775 F.3d 538, 543 (2nd Cir. 2015) (state "could constitutionally require that all children be vaccinated in order to attend public school. . . . [but the State went] beyond what the Constitution requires by allowing an exemption for parents with genuine and sincere religious beliefs").  VCOM adopted a religious exemption, despite a religious-neutral vaccine mandate, which the law views as a matter of grace, and all plaintiffs herein applied for just such a religious exemption and obtained one.  Thus, plaintiffs substantive due process rights have not been violated, and there are no issues before the court of fundamental constitution import.  As such, this court lacks jurisdiction over plaintiffs' claims, and plaintiffs' amended complaint must be dismissed.

## V.      Preliminary Injunction Standard

Out of an abundance of caution, should the court determine plaintiffs have standing and the court maintains jurisdiction over plaintiffs' claims, VCOM shows plaintiffs are not entitled to injunctive relief.  A preliminary injunction is an extraordinary remedy that should be treated as the exception, rather than the rule.  *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).  Plaintiffs' request for preliminary injunction cannot be granted unless the students demonstrate by a clear showing: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any potential harm to the non-movant; and (4) that the injunction will not undermine the public interest.  *See Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997); *see also Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 278 (5th Cir. 1996); *Doe v. Duncanville Indep. Sch. Dist.*, 994 F.2d 160, 163 (5th Cir. 1993); *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985).  Moreover, plaintiffs <u>must</u> satisfy <u>all</u> four factors; a failure to satisfy even one of the four factors requires a denial of the preliminary injunction.  *Mississippi Power*, 760 F.2d at 621 (emphasis added).

### 1.      *Plaintiffs Have Not Shown a Substantial Likelihood of Success:*

Given the relative newness of COVID-19 and the law surrounding it, the instant matter is of a unique constitutional nature and presents unique constitutional questions.  Limited courts have addressed the issue before the court today.[2]  Plaintiffs herein assert VCOM's COVID policy

---

[2] *Klaassen v. Trs. of Ind. Univ*, 2021 U.S. App. LEXIS 22785 (7th Cir. Aug. 2, 2021): court upheld vaccine mandate, stating: "the university isn't forcing anyone to get a vaccine. It's offering students and staff options: They can either get the vaccine, apply for an exemption or find a new school to attend (or, in the case of staff, a new job). Since the policy only applies to the fall 2021 semester, students can also choose to take the semester off or attend all remote classes."
*Bridges v. Houston Methodist Hosp.*, 2021 U.S. Dist. LEXIS 111718 (S.D. Tx. June 12, 2021): court upheld a COVID-19 vaccine mandate by a private employer hospital.
On Feb. 28, 2021, corrections officers in New Mexico filed suit against Doña Ana County in the U.S. District Court of New Mexico following the institution of a policy requiring all designated first responders to receive the COVID-

violates their right to practice religion freely, as the vaccine does not align with their religious ideology.  Since their inception, vaccines have effectively worked to assuage the havoc wreaked upon the global population by pandemics and communicable diseases.  As the Supreme Court stated, "the elimination of communicable diseases through vaccination [is] one of the greatest achievements of public health in the 20th century."  *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 226, 131 S. Ct. 1068, 179 L. Ed. 2d 1 (2011).  A vaccine is implemented as a matter of public health, and historically has not been constitutionally deterred from state mandate.  *See, e.g., Zucht v. King*, 260 U.S. 174, 176-77 (1922); *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 30-31 (1905).  Addressing challenges to vaccine mandates, using a rational basis standard of review, courts have determined that the right to practice religion freely does not include liberty to expose the community to communicable disease or to ill health or death.  *See, e.g., Prince v. Massachusetts*, 321 U.S. 158, 166-67 (1944); *Zucht*, 260 U.S. at 176-77; *Jacobson*, 197 U.S. at 30-31; *Phillips v. City of New York*, 775 F.3d 538, 542-43 (2d Cir. 2015).

Moreover, the Constitution does <u>not</u> provide a fundamental right to a collegiate education. Nor does it secure as a fundamental liberty a student's right to attend a public university no matter his or her vaccinated status.  *Klaassen, supra,* at *63.  The *Klaassen* court determined that, in balancing the risks of implementing a vaccine mandate, Indiana University was not irrational in establishing the mandate and favoring the route that promoted greater safety for its students.  *Id.* at *85.  According to the court therein, Indiana University has a rational basis to conclude that the COVID-19 vaccine is safe and efficacious for its students.  *Id.* at *100.  As the court noted, much like over 500 universities and colleges in the United States that have done the same, Indiana

---

19 vaccination or face adverse consequences. U.S. District Judge refused to grant a temporary restraining order. The defendant's motion to dismiss is pending. Similarly, on March 17, 2021, in Los Angeles, seven teachers and school district workers sued the L.A. Unified School District in the U.S. District Court for the Central District of California over its mandatory vaccination policy. The claims against the school district were dismissed.

University reasonably relies on the vaccine as a measure to return to normal school functioning. *Id.* The court acknowledged that Indiana University's mandate goes beyond what other public universities have done, but the court held that does not compel a finding that the policy is unreasonable. *Id*. at *101.

The *Klaassen* plaintiffs' arguments as to the unconstitutionality of the vaccine mandate at issue there are strikingly similar to plaintiffs' arguments herein as to the unconstitutionality of VCOM's COVID policy. The *Klaassen* court correctly concluded that, overall, the students' arguments amounted to disputes over the most reliable science, and that when reasonable minds can differ as to the best course of action—for instance, addressing symptomatic versus asymptomatic virus spread or any number of issues here—the court does not intervene so long as the university's process is rational in trying to achieve public health. *Id*. at *103. Thus, the court held there is a rational basis for making distinctions here; no student, including those not yet exempt, have shown that Indiana University's vaccine mandate as applied to them violates rational basis review. *Id*. at *104. Accordingly, the court denied plaintiffs' request for preliminary injunction.

For the same reasons used by the *Klaassen* court, this court should deny plaintiffs' request for preliminary injunction, as plaintiffs have failed to show a likelihood of success on the merits. In fact, plaintiffs have failed to even present an argument as to how VCOM's COVID policy violates the Fourteenth Amendment and how the policy does not satisfy the rational basis standard of review. Plaintiffs' amended complaint delves no further into constitutional issues, the issues that would give this court jurisdiction, than to conclusory state "VCOM has adopted a policy in direct violation of the United State Constitution…" (R.Doc. 8, p. 2). Considering the well-known legal principle that "a plaintiff is the master of her own complaint," and that courts should not read

15

unalleged assertions into a complaint (*see Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398-99 (1987)), plaintiffs herein have not even asserted a constitutional claim, let alone shown the likelihood of success of this claim.   Accordingly, plaintiffs' request for preliminary injunction must be denied.

Along with their requests for religious exemptions filed with VCOM, plaintiffs also lodged complaints about the additional requirements for those unvaccinated students, such as wearing a mast, regular testing, health monitoring, etc.   Though, plaintiffs do not allege in their amended complaint that any of the additional requirements violate constitutional protections or state law. Conversely, in paragraph 10, plaintiffs speak to the benefits of wearing a mask. (R.Doc. 8). Regardless, there is no fundamental constitutional right to not wear a mask. *Kelly v. ImagineIF Library Entity*, 2021 U.S. Dist. LEXIS 111958, 8 (D. Mont. June 15, 2021); *Whitfield v. Cuyahoga Cnty. Pub. Library Found.*, 2021 U.S. Dist. LEXIS 92944, 4 (N.D. Ohio May 17, 2021).

2.     *Irreparable Harm:*

Irreparable harm is "harm that cannot be repaired and for which money compensation is inadequate." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997).   Yet, plaintiffs state in their amended complaint that their damages exceed $75,000, thereby monetizing their alleged harm, which, in turn, cannot be irreparable.   Furthermore, plaintiffs have failed to show irreparable harm suffered by them as a result of VCOM's COVID policy.   Speculative concerns about hypothetical future events do not show irreparable harm.   *Duthie v. Matria Healthcare, Inc.*, 543 F. Supp.2d 958, 960 (N.D. Ill. 2008).   A delay in collegiate or graduate education is not typically irreparable harm.   *See, e.g., Phillips v. Marsh*, 687 F.2d 620, 622 (2nd Cir. 1982); *Hodges v. Bd. of Supervisors*, 2020 U.S. Dist. LEXIS 153949, 7 (E.D. La. Aug. 25, 2020).   If plaintiffs fail to show irreparable harm, the analysis ends and the preliminary injunction should not be issued; the court

16

need not continue to analyze the remaining factors required for injunctive relief.  *Adams v. City of Chicago*, 135 F.3d 1150, 1154 (7th Cir. 1998); *Geneva Intern. Corp. v. Petrof, SPOL, S.R.O.*, 529 F.Supp.2d 932, 940 (N.D. Ill. 2007).

## VI.    Conclusion

The Fourteenth Amendment permits VCOM to pursue a reasonable and due process of vaccination in the legitimate interest of public health for its students, faculty, and staff.  On the preliminary record before the court, VCOM has unequivocally done so for its campus communities, leaving the students with multiple choices, not just forced vaccination.

Respectfully submitted,

NEAL LAW FIRM
2485 Tower Drive, Suite 7
Monroe, Louisiana 71201
Telephone: (318) 807-0929
Facsimile:  (318) 807-0926
Email:  mneal@neallawfirm.net
Email:  jhaedicke@neallawfirm.net

_/s/ Mark J. Neal_
Mark J. Neal, La. Bar No. 24580

_/s/ J. Jordan Haedicke_
J. Jordan Haedicke, La. Bar No. 35612

## CERTIFICATE

I hereby certify that a copy of the above and foregoing has been duly served upon counsel of record on this 9th day of August 2021 via the Court's EM/ECF filing system.

_/s/ Mark J. Neal_
Mark J. Neal, APLC

17