UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **RACHEL LYNN MAGLIULO, ET AL** | **CIVIL ACTION NO. 3:21-CV-2304** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **EDWARD VIA COLLEGE OF OSTEOPATHIC MEDICINE** | **JUDGE KAYLA D. MCCLUSKY** |

**MEMORANDUM ORDER**

The issue presented to this Court is whether Edward Via College of Osteopathic Medicine ("VCOM"), located on the University of Louisiana at Monroe ("ULM") campus, has complied with Louisiana law with respect to student mandated COVID-19 vaccines. VCOM is alleged to be acting under the color of state law as a result of a Collaboration Agreement between ULM and VCOM. Because federal jurisdiction is based upon diversity, this Court applies Louisiana state law.

The Movants/Plaintiffs Rachel Lynn Magliulo ("Magliulo"), Matthew Shea Willis ("Willis"), and Kirsten Willis Hall ("Hall"), (collectively "Plaintiffs"), and the State of Louisiana ("Louisiana"), filed a Motion for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction [Doc. No. 1] on August 2, 2021. VCOM filed a Response [Doc. No. 10] on August 9, 2021. An amicus curiae brief[1] [Doc. No. 13] was filed on behalf of the Louisiana, Office of the Attorney General ("AG") on August 13, 2021. A Reply [Doc. No. 12] was filed by Plaintiffs on August 13, 2021.

For the reasons set forth herein, Plaintiffs' Motion for Temporary Restraining Order ("TRO") is GRANTED.

---

[1] The State of Louisiana withdrew from the case in the First Amended Complaint [Doc. No. 8] on August 5, 2021.

I. **BACKGROUND**

VCOM is a College of Osteopathic medicine, located on the ULM Campus in Monroe, Louisiana. Magliulo is a student and citizen of Florida, entering her first year at VCOM. Willis and Hall are students and citizens of Louisiana, entering their second year at VCOM. On June 30, 2021, Plaintiffs received an email from VCOM, which informed them that VCOM was requiring all students to receive a full COVID-19 vaccination to enroll at VCOM in fall 2021 classes [Doc. No. 1-3]. The email also stated that requests for religious and medical exemptions would be heard on an individual basis, with appropriate verifications. A Student Request Form for Exemption from COVID-19 Vaccination [Doc. No. 1-4] ("Request Form") was attached to the email. The Request Form limited exemptions to medical conditions and religious exemptions.

Although VCOM's June 30, 2021 email stated that exemptions based on religious or medical conditions would be heard on an individual basis, other VCOM requirements stated VCOM does not recognize either religious or medical exemptions. VCOM's Student Health Requirements [Doc. No. 1-2] stated "VCOM does not waive immunization or student health requirements for religious or personal preferences."

Plaintiffs all dissented and requested an exemption based on deeply held religious beliefs. Plaintiffs dissented because they believed the vaccine was devised from aborted fetal tissues, violating their religious beliefs. They also dissented because the vaccine was approved for emergency use only and was therefore experimental. Plaintiffs allege all three of their exemption requests were denied. Magliulo was given a deadline of July 19, 2021 to either defer school for a year or get a COVID-19 vaccine by a July 14, 2021 email [Doc. No. 1-6].

After VCOM received letters on behalf of Plaintiffs from Liberty Counsel [Doc. No. 1-7] and from the AG [Doc. No. 1-12], VCOM changed its policy. The policy change was entitled

"Guidance for VCOM Students on Campus and Clinical Settings Under COVID-19 Conditions Beginning 7-16-2021" [Doc. No. 1-8].

The policy changes allowed students to request exemptions from the COVID-19 vaccine based upon medical condition or religious beliefs, but if a student received a medical or religious exemption, they would be prohibited (unlike vaccinated students) from participating in educational settings that involve hands-on patient care or hands-on examination of classmates. The options listed by VCOM for students who chose not to receive the vaccine were:

1) not attend VCOM;

2) defer enrollment at VCOM for one year; or

3) be accommodated by completing all requirements except patient care duties or be placed in an alternate education pathway that defers clinical involvement.[2]

Additionally, all students who were not vaccinated were required to wear a mask on campus, have frequent testing for COVID-19 and to use the MyHealthTracer.com application.[3]

VCOM's COVID-19 vaccine policy changed again on August 5, 2021. Nathan Kinnard ("Kinnard"), Associate Dean of Student Affairs and Development, sent an email [Doc. No. 10-13, 14, &15] to Plaintiffs telling them the VCOM's COVID-19 Committee was meeting the following day (August 6, 2021) to decide on exemptions and accommodations. For the first time, VCOM told the three students they had a "dissent option"[4] that they could opt into. Kinnard indicated VCOM wanted the students to know of this option "as some students have found the policy confusing." The dissent option was not mentioned in any of VCOM's previous emails or written policies. Additionally, there was no further explanation by VCOM of what

---

[2] Whether the students will be required or allowed to make up the clinical involvement/patient care duties is unclear.
[3] None of these are required for vaccinated students.
[4] Presumably in accordance with La. R.S. 17:170

3

restrictions would be placed upon a student that exercised the dissent option, or whether VCOM would even allow students that exercised this option to attend VCOM.[5]

VCOM's COVID-19 policy changed again on August 9, 2021. On August 9, 2021, Plaintiffs received another email from VCOM in reference to VCOM's August 6, 2021 COVID-19 Committee meeting [Doc. No. 10-5,6 and 7]. These emails, from Randy Schuller ("Schuller"), VP for VCOM Institutional Policy and Administrative Law, told Plaintiffs that the committee had approved their religious exemption, granted their appeal "for the current time," upon compliance with these listed restrictions:

> 1) Their religious exemption was time-limited until one or more of the vaccines currently under Emergency Use Authorization received full and final approval for use by the U.S. Food and Drug Administration. At that time, they would either need to be vaccinated or apply again for an exemption;[6]
>
> 2) Complete the COVID-19 module and the COVID-19 vaccination modules and pass those portions in their Microbiology or Immunology course by the end of the block;
>
> 3) Correctly wear an approved mask at all times on campus, except when eating or drinking, and to stay six feet away from others when eating or drinking. Failure to wear a mask would result in suspension;
>
> 4) Must not come to campus, or any VCOM event, if ill, or have symptoms of an illness, which also must be reported on MyHealthTracer.com, notify the COVID officer, and have a COVID-19 test if having any common COVID-19 symptoms;
>
> 5) Read and follow the additional guidance set forth by the CDC regarding safety protocols for institutions of higher education campuses;
>
> 6) May attend the Principle of Primary Care labs and OMM labs; however, must identify a student who agrees to work with a student who is not vaccinated, as the labs involve touching and close contact with another student;
>
> 7) May complete all educational requirements for your academic year except those activities where you are acting as a medical care provider including, but not limited to, Standardized Patient Examinations and Early Clinical Experiences, which will be deferred until the threat of COVID-19 has subsided or the vaccine is approved;

---

[5] VCOM now argues that Magliulo, Hall, and Willis have waived the unexplained dissent option.
[6] The email further explained why the students' religious exemption and fear of the vaccination were based upon "misinformation."

4

  8) May choose to defer their enrollment for a period of one year; and

  9) May choose not to attend VCOM.

The emails further stated that failure to comply with the above restrictions would be referred to the Professional and Ethical Standards Board, which could result in dismissal.

The restrictions/accommodations set forth in Schuller's August 9, 2021, email differed from VCOM's "Guidance for VCOM Students on Campus and Clinical Settings Under COVID-19 Conditions Beginning 7-16-2021" [Doc. No. 1-8] by adding additional restrictions. Restrictions 1, 2, 5, and 6 in the August 9, 2021, email were additional restrictions that were not in VCOM's July 16, 2021 policy.

## II. LAW AND ANALYSIS

### A. Louisiana Law

The following Louisiana laws are applicable.

**La. Const. Art. 1, Section 8**: No law shall be enacted respecting an establishment of religion or **prohibiting the free exercise thereof.**

**La. Const. Art. 1, Section 12**: In access to public areas, accommodations, and facilities, every person shall be free from discrimination based on… religion.

**La. R.S. 13:5231-32**: Effective August 15, 2020, the Louisiana Legislature enacted the "Preservation of Religious Freedom Act" ("PRFA"), Section 5232 provides that "The legislature finds and declares that: (1) Free exercise of religion is a fundamental right of the highest order in this state."

**La. R.S. 17:170** prescribes the requirements for persons entering schools, including colleges, in the State of Louisiana.

**Section E of R.S. 17:170** reads:

E.  No person seeking to enter any school or facility enumerated in Subsection A.  of this Section shall be required to comply with the provisions of this Section if the student or his parent or guardian submits either a written statement from a physician stating that the procedure is contradicted for medical reasons, or a **written dissent** from the student or his guardian is presented.

**Section F. of R.S. 17:170 states**:

F.  In the event of an outbreak of a vaccine-preventable disease at the location of an educational institution or facility enumerated in Subsection A of this Section, the administrators of that institution or facility are empowered, upon the recommendation of the office of public health, to exclude from attendance unimmunized students and clients until the appropriate disease incubation period has expired or the unimmunized person presents evidence of immunization.

**House Resolution 20 Education – COVID-19 Vaccinations**.

On May 10, 2021, the Louisiana House of Representatives passed a resolution recognizing mandated COVID-19 vaccines for colleges and universities.  Resolution 20 (1) stated that the COVID-19 vaccines are experimental in nature and have not received full FDA approval; (2) stated that the COVID-19 vaccines are subject to 21 U.S.C. 360bbb – 3(e)(1)(A)(ii)(III), which grants individuals the option to accept or refuse the vaccine; (3) stated that digital applications/vaccine passports, which track the vaccinated and restricts the unvaccinated, violates individual and civil liberties and privacy; (4) stated that Louisiana and federal law allow persons to be allowed to refuse vaccination for reasons of health, religion or conscience; (5) stated that since the survival rate for persons aged 20 or younger, without treatment is 99.997% and since it is unclear whether educational institutions mandating vaccines

or tests would be shielded from liability; "THEREFORE, BE IT RESOLVED that the House of Representatives of the Legislature of Louisiana does herein authorize and direct each licensed day care center, kindergarten, elementary or secondary school, **college**, university, proprietary school or vocational school that requires a vaccine for COVID-19 to fully inform each student or parent or legal guardian of a student that the COVID-19 vaccine is for emergency use only, pursuant to an Emergency Use Authorization, is experimental, and has not been fully approved by the Food and Drug Administration and that he or she has a right to refuse the vaccination for reasons of health, religion, or conscience."

### B. VCOM Opposition

In VCOM's Opposition [Doc. No. 10] VCOM maintains it approved the Plaintiffs' religious exemptions on August 6, 2021,[7] and that Plaintiffs are not entitled to a TRO. VCOM further alleges the students do not have standing, and therefore, there is no federal jurisdiction. VCOM argues there is no justiciable controversy because all three of the Plaintiffs qualified for and were given a religious exemption under their July 16, 2021 policy. VCOM also argues that there is no justiciable controversy because the three students were not forced to choose between their religion and taking the vaccine. They also could have taken the semester off, taken online classes, or attended another university. *Klaassen v. Trustees of Indiana Univ.*, 2021 WL 3073926 (N.D. Ind. July 18, 2021).

Additionally, VCOM argues that Plaintiffs have waived their right to make a claim under La. R.S. 17:170 E's right of "written dissent" referenced in Kinnard's email to them [Doc. No. 10-13, 14 & 15] on August 5, 2021,[8] which for the first time, mentioned, without explaining, Plaintiffs' right of dissent.

---

[7] Subject to the restrictions previously listed.
[8] The day before the COVID-19 Committee meeting.

7

VCOM argues since its policy is a neutral rule that does not discriminate among religions, there is no Constitutional violation for Plaintiffs' religious exemption.

### C. Louisiana Attorney General Amicus Brief

The State of Louisiana, AG's office filed an Amicus Curiae brief [Doc. No. 13]. AG argues the mandatory vaccination policy instituted by VCOM does not comply with Louisiana law and that students have the right to dissent under R.S. 17:170 E. without being subject to punitive and retaliatory threats. AG argues the "accommodations" imposed by VCOM on Plaintiffs are impermissible under the Louisiana Constitution of 1974 and Louisiana statutes.

AG asks this Court to grant the TRO because Plaintiffs meet all four requirements for a TRO.

### D. Plaintiffs Reply

In Plaintiffs' Reply, they argue that VCOM ignores La. R.S. 17:170E's plain, unequivocal language, that Plaintiffs are not required to give any explanation as to the reasons for dissent, and that VCOM's "accommodations" are unduly burdensome and discriminate on the basis of religion.

## III. STANDING

VCOM argues this Court does not have jurisdiction because the Plaintiffs do not have standing. Specifically, VCOM states that because all Plaintiffs were granted a religious exemption, there is no injury to them to be redressed by this Court.

A plaintiff seeking to establish injury in fact must show that plaintiff suffered "an invasion of a legally protected interest that is 'concrete,' 'particularized,' and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1548, (2016), as revised (May 24, 2016). For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Id.* at 1548. A "concrete" injury must be "de facto" that is, it must

"actually exist." "Concrete" is not, however necessarily synonymous with "tangible." Intangible injuries can nevertheless be "concrete." <u>Id.</u> at 1549.

Additionally, the injury must be fairly traceable to the defendant's conduct, that the Court's decision will likely redress. <u>Id.</u> at 1547.

All the Plaintiffs have standing. Although granted a religious exemption, the list of "accommodations," is restricting in nature. Particularly, the students would not be able to graduate or advance because they will not be able to engage in Standardized Patient Examinations and Early Clinical Experiences, which are requirements for graduation. Additionally, the students allege the accommodations discriminate on the basis of religion, and that VCOM has violated the provisions of R.S. 17:170 E. All of Plaintiffs' complaints are concrete, particularized and can be redressed in court.

### IV.     LEGAL ANALYSIS

This is a diversity case in which Plaintiffs allege VCOM has violated Louisiana law. All 50 states have mandatory vaccination laws requiring their citizens to be vaccinated. Three types of exemptions from mandatory state vaccination laws exist: medical, philosophical, and religious exemptions.[9] California is among the states with the strictest vaccination exemption requirements, while Louisiana is on the opposite end of the spectrum, allowing all exemptions. <u>Id.</u>

In *Zucht v. King*, 260 U.S. 174, 176 (1922), the U.S. Supreme Court affirmed state's rights to impose their own requirements regarding vaccinations. Louisiana has done so. La. R.S. 17:170 E. specifically states that any school or facility listed in Subsection A[10] cannot

---

[9] By the Pricking of My Thumbs, State Restriction This Way Comes: Immunizing Vaccination Laws from Constitutional Review, 77 La. L. Rev. 209.
[10] Which includes colleges and universities.

require a person to comply with R.S. 17:170 if the student, or the student's parent or guardian either submits a written statement from a physician stating the procedure is contraindicated for medical reasons, **or a written dissent from the student or his parent or guardian is presented**.

### A.  La. R.S. 17:170

This Court agrees with Plaintiffs' argument that the word "dissent" in R.S. 17:170 E. covers both religious and philosophical exemptions. The statutory language clearly only requires a "written dissent" for an exemption for anything other than medical. This would include both religious and philosophical objections. There is also nothing that requires students to choose between a philosophical or a religious objection.

La. R.S. 17:170 F. provides the mechanism for an outbreak of a vaccine-preventable disease[11] at VCOM. VCOM is authorized to exclude from attendance unimmunized students and clients until the appropriate disease incubation period has expired or the unimmunized person presents evidence of immunization. However, **the mechanism requires the recommendation of the Louisiana Office of Public Health.**

VCOM does not have a recommendation from the Louisiana Department of Public Health to exclude from attendance unimmunized students.[12] Therefore, under Louisiana law, students at VCOM are not subject to VCOM's mandatory vaccine requirements if the student provides a written statement from a physician that the procedure is contraindicated for medical reason or **presents a written dissent from a student** or student's guardian.

---

[11] It should also be noted that all of the COVID-19 vaccinations are under emergency use authorization and have not yet been fully approved by the FDA.
[12] Other colleges and universities have obtained permission to require vaccines from the Louisiana Department of Health, but subject to the student's right to opt out of any vaccine requirement in accordance with R. S. 17:170 E.

La. R.S. 17:170 does not provide a method for VCOM to judge or restrict the student dissent. A Court is to interpret law, not write it. If the legislature of Louisiana had intended for a college to be able to restrict students' dissents, it would have put that language in the statute. Student dissent can be based upon religious beliefs or any other reason. By voting to accept, but place restrictions upon the Plaintiffs' student dissent, VCOM has violated the provisions of La. R.S. 17:170. Rather than restrictions, VCOM's only options are either to allow the dissenting students to attend VCOM, or to obtain approval from the Louisiana Department of Health to exclude unimmunized students from admission.

Even if R.S. 17:170 allows for restrictions to be placed upon a student's dissent, the restrictions placed by VCOM on Plaintiffs are excessive. Restrictions that keep students from completing their curriculum defeats the purpose of having the right of dissent.

On the day before their COVID-19 Committee met, VCOM sent Plaintiffs an email [Doc. No. 10-13, 14 &15] telling them, for the first time, that they had a dissent option, without providing any information as to what the requirement or consequences of such a dissent option would be.

The religious exemption provided to Plaintiffs by VCOM **was** the exercising of a dissent pursuant to R.S. 17:170 E. VCOM had no right to restrict the Plaintiffs, and the Plaintiffs have not waived the dissent option.

Therefore, VCOM, by restricting the Plaintiffs' dissents, has violated the provisions of La. R.S. 17:170 E.

B.    **Religious Exemption**

As an additional ground, Plaintiffs have alleged that VCOM has discriminated against them based upon religion and violated and/or restricted their right to the free exercise of religion. The "free exercise clause" in La. Const. Art. I, Section 8 states:

> No law shall be enacted respecting an establishment of religion **or prohibiting the free exercise thereof.**

Because the language in La. Const. Art. I, Sect. 8 is almost identical to USCA Const. Amend. I, the constitutional provisions should be construed in like manner. Therefore, decisions of the United States Supreme Court are applicable. *Seegers v. Parker,* 241 S.2d 213 (La. 1970), cert. den. 91 S.Ct. 2276 (1971); Op. Atty. Gen, No. 75-1731; (Jan. 9, 1976) and Op. Atty. Gen., No. 75-1546 (March 1, 1976).

Also applicable is the PRFA, La. R.S. 13:5231, et. seq. This Act, which became effective on August 15, 2010, made several declarations:

1) That the free exercise of religion is a fundamental right of the highest order in the State of Louisiana; (13:5232);

2) That a "compelling state interest" is required for state actions that burden religious exercise directly, or to its effect; (13:5232 and 13:5233);

3) That even a facially neutral rule that substantially burdens a persons' exercise of religion requires the government show a "compelling governmental interest" and use the "least restrictive means" of furthering that compelling governmental interest" (13:5233).

4) Defines "burden" to mean that the government, directly or indirectly, does any of the following: (13:5234)

    (a) constrains or inhibits conduct or expression mandated by a person's sincerely held religious tenet or belief;
    (b) significantly curtails a persons' ability to express adherence to the person's religious faith;
    (c) denies a person a reasonable opportunity to engage in activities which are fundamental to the person's religion; or
    (d) compels conduct or expression which violates a tenet or belief of a person's religious faith;

5) Defines "Government" or "governmental agency" as: (13:5234)

    (a) an entity of the State of Louisiana;
    (b) any political subdivision of the State;
    (c) any other public or governmental body of any kind which is not a state agency; or

      (d)    any official or other person acting under color of law;

6)    Allows for injunctive relief and/or damages for a violation; (13:5237)

7)    Requires a thirty day certified mail notice, unless the threat is imminent; (13:5238) and

8)    These protections are in addition to the protections granted by federal law, and by the state and federal constitutions.

The PRFA only applies to VCOM if VCOM is acting "under color of state law." That issue will be discussed in the next topic. However, if this act does apply to VCOM, VCOM must demonstrate its actions are in furtherance of a compelling governmental interest, and that it used the least restrictive means of compelling that governmental interest. VCOM can likely show a compelling state interest (safety of students, employees, and patients), but is unlikely to meet the second prong, that it used the least restrictive means of compelling that interest.

First, this Court finds the threat to religious freedom was imminent and therefore no reason to send a thirty-day notice (R.S. 13:5238). VCOM's pre-July 16, 2021 policy was unclear. It appeared to allow exemptions to the vaccine, but other portions [Doc. No. 1-2] stated VCOM did not waive immunizations for religious or personal preferences. However, VCOM changed its policy effective July 16, 2021 to allow exemptions based upon medical or religious beliefs but to also require a student that received a medical or religious exemption to not participate in educational settings that involve hands-on care of patients or classmates, to wear a mask on campus, have frequent testing for the COVID-19 virus and to use the MyHealthTracer.com application.

When VCOM approved the Plaintiffs' religious exemptions on August 6, 2021, VCOM did not follow its own policies, but added the following additional restrictions:

1)    the religious exemption was time limited until one or more of the COVID-19 vaccines received FDA approval;

13

    2)    complete the COVID-19 module and the COVID-19 educational modules and pass those portions in their Microbiology or Immunology course by the end of the block;

    3)    read and follow the additional guidance set forth by the CDC regarding safety protocols for institutions of higher education campuses; and

    4)    to attend labs, must identify and find a student who agrees to work with an unvaccinated student.

The Plaintiffs still were not allowed to participate in Standardized Patient Exams and Early Clinical Experiences, (which are required to advance or graduate), even if wearing a mask. Therefore, VCOM is unlikely to be able to show that it used the least restrictive means of compelling their interest of keeping students, employees, and patients safe.[13]

    **C.**    **State Action**

La. Const. Article I, Section 8 and the PRFA require "state action." *Price v. U-Haul Co. of Louisiana*, 745 So.2d 593, 594 (La. 1999). State action may be found when a private entity is entwined with governmental policies or when government is entwined in its management or control. *Evans v. Newton*, 382 U.S. 296, 299 (1966).

A Public/Private Collaboration Agreement ("Agreement") was entered into by ULM (a public university) and VCOM on September 28, 2018 [Doc. No. 1-1]. The Agreement indicated VCOM was to be affiliated with ULM by ULM entering into a ground lease with Harvey W. Peters Research Foundation ("HPRF"). HPRF was to construct a medical school facility on ULM land. HPRF was to enter into a lease with VCOM under which VCOM will operate a branch of VCOM in the building.

Some of the pertinent provisions of the Agreement were:

---

[13] These restrictions apply to "unvaccinated students," not students who actually test positive for the COVID-19 virus.

14

    1)    VCOM is a non-profit 501(c)(3) Medical College incorporated under the laws of Virginia;

    2)    both ULM and VCOM have separate policies and procedures;

    3)    VCOM's policies and procedures are required not to be in conflict with ULM or the State of Louisiana;

    4)    VCOM students are allowed to use the ULM facilities and were to be governed by the ULM Code of Student Conduct when utilizing the ULM facilities.

    5)    VCOM agreed not to discriminate on the basis of religion, gender, race, age, etc.

    6)    ULM has the right to review VCOM handbooks, to assure their policies are not in conflict with ULM policy;

    7)    VCOM and its students are allowed to utilize and access ULM's general parking, library, public buildings, participate in intramurals, access to ULM athletic events, participate in student recreational events, etc.

    8)    VCOM is billed for its students' student service fees at ULM;

    9)    VCOM and ULM agree to collaborate on joint research projects;

    10)    VCOM and ULM agree to collaborate with the use of shared faculty for academic teaching;

    11)    the agreement is to be governed by and construed in accordance with the laws of the State of Louisiana.

The VCOM building was not built with state funds, but by HPRF. The building was built on land owned by ULM, that was state land. A student activity fee is charged for VCOM students. VCOM students are allowed to use the ULM library and other facilities, attend athletic events, participate in intramural sports, and are for all practical purposes, ULM students. Although VCOM is a private university, it is clearly entwined with ULM policies and entwined with ULM management and control.

This Court finds VCOM's actions constitute state action and that VCOM is therefore subject to La. Constitution, Article I, Section 8, and the Preservation of Religious Freedom Act.

### D. Other Jurisprudence

This Court is aware of and has reviewed four recent cases that deal with the COVID-19 vaccine issue.[14] These cases are distinguishable from the present case, because it involves specific Louisiana statutes, La. R.S. 17:170 and the PRFA.

## V. TRO REQUIREMENTS

A party seeking a TRO or preliminary injunction under Fed. R. Civ. P. 65 must show: (i) a substantial likelihood of success on the merits; (ii) the movant will suffer irreparable injury without the injunction; (iii) the threatened injury outweighs the threatened harm to the party against whom the injunction is sought; and (iv) granting the injunction will not disserve the public interest.  *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991); *Speaks v. Kruse*, 445 F.3d 396, 399–400 (5th Cir. 2006).

### A. Substantial Likelihood of Success on the Merits

For the reasons previously set forth, this Court believes the Plaintiffs have a substantial likelihood of success on the merits on the basis of La. R.S. 17:170, La. Const. Art. I, Sect. 8, and the PRFA.

### B. Irreparable Injury

Irreparable harm generally exists when there is no adequate remedy at law, such as monetary damages.  *Parks v. Dunlop*, 517 F.2d 785, 787 (U.S. 5th Cir. 1975).  Although the Plaintiffs allege monetary damages,[15] VCOM placed a "Scarlett Letter" type list of requirements on the "unvaccinated," which will preclude the Plaintiffs from completing required components

---

[14] *Klaassen v. The Trustees of Indiana University*, 2021 WL 3073926 (N.D. Ind. July 18, 2021) cert. den. August 12, 2021; Bridges *v. Houston Methodist Hospital*, 2021 WL 2399994 (S.D. Texas, July 12, 2021); Norwegian *Cruise Line Holdings, Ltd. v. Rivkees*, No. 21-22492-CIV, 2021 WL 3471585 (S.D. Fla. Aug. 8, 2021); and *Wade v. University of Connecticut Board of Trustees*, 2021 WL 3616035 (D. Conn. August 16, 2021).
[15] Which they were required to do for purposes of diversity jurisdiction.

of their required curriculum. Also, the Plaintiffs would be required to disclose their "unvaccinated" status to other students in order to obtain the other students' consent to work with the "unvaccinated."[16]

To the extent that constitutional harm is established, the law presumes irreparable harm. As previously discussed, Plaintiffs have established constitutional harm under the Louisiana Constitution. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 67-68 (2020).

In addition to showing constitutional harm, Plaintiffs have shown irreparable harm because of their inability to complete curriculum requirements, disclosure of their "unvaccinated" status, and excessive restrictions.

### C. Weighing the Harm and Public Interest

The last two requirements for a TRO are that the injury to Plaintiffs outweighs the potential harm of granting relief, and that the TRO will not disserve the public interest. Plaintiffs have met the last two requirements. The Plaintiffs' potential harm of a constitutional violation, ability to complete their education, ethics charges, and possible expulsion outweighs VCOM's interest. Although VCOM has an interest in protecting its students, its students are allowed to attend ULM functions, participate in ULM intramural events, study in the ULM library and mingle with ULM students, who are not required to get the vaccine.

The public interest is not disserved. Granting the TRO would allow the parties to follow the laws of the State of Louisiana.

---

[16] Despite the fact that VCOM students are allowed to mingle with ULM students, who don't have these requirements.

## VI. CONCLUSION

The Plaintiffs have satisfied all four elements for a temporary restraining order to be issued.

For the foregoing reasons, this Court GRANTS Plaintiffs' Motion for Temporary Restraining Order [Doc. No. 1]. Accordingly,

**IT IS ORDERED** that Edward Via College of Osteopathic Medicine along with its directors, officers, employees, administrators, professors, and teachers are hereby ENJOINED and RESTRAINED from mandating that Rachel Lynn Magliulo, Matthew Shea Willis and Kirsten Willis Hall receive a COVID-19 vaccination as a condition of enrollment at VCOM.

**IT IS FURTHER ORDERED** that Edward Via College of Osteopathic Medicine along with its directors, officers, employees, administrators, professors, and teachers are hereby ENJOINED and RESTRAINED from retaliating against, or, discriminating against Plaintiffs for filing this proceeding.

**IT IS FURTHER ORDERED** that this TRO shall remain in effect pending the final resolution of this case, or upon further orders from this Court, the United States Court of Appeals for the Fifth Circuit, or the United States Supreme Court.

No security bond shall be required under Federal Rule of Court Procedure 65.

**MONROE, LOUISIANA** this 17th day of August 2021.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE