UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| RACHEL LYNN MAGLIULO, MATTHEW SHEA WILLIS, AND KIRSTEN WILLIS HALL | CIVIL ACTION NO. 3:21-cv-02304 |
| VERSUS | JUDGE DOUGHTY |
| EDWARD VIA COLLEGE OF OSTEOPATHIC MEDICINE | MAGISTRATE JUDGE MCCLUSKY |

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR CONTEMPT
FOR VIOLATION OF TEMPORARY RESTRAINING ORDER**

Respectfully submitted:

BREITHAUPT, DUBOS & WOLLESON, LLC
1811 Tower Drive
Monroe, Louisiana 71201
Telephone:   (318) 322-1202
Facsimile:    (318) 322-1984
Email:         michael@bdw.law
Email:         adam@bdw.law

       /s/ Michael L. DuBos
Michael L. DuBos (#23944), T.A.
Adam R. Karamanis (#39544)

## Table of Contents

| | | |
|---|---|---|
| **I** | **Background Facts** …………………………………………………………………3 |
| **II** | **Legal Standard** …………………………………………………………………12 |

## Table of Authorities

### CASES

Am. Airlines, Inc. v. Allied Pilots Ass'n, 228 F.3d 574 (5th Cir. 2000) …………………………12

Lewis v. S. S. Baune, 534 F.2d 1115, (5th Cir. 1976) ……………………………………………12

Martin v. Trinity Indus., Inc., 959 F.2d 45 (5th Cir.1992) ……………………………………….12

N.L.R.B. v. Trailways, Inc., 729 F.2d 1013 (5th Cir.1984) ………………………………………12

Norman Bridge Drug Company v. Banner, 5 Cir. 1976, 529 F.2d 822 ………………...…..12, 13

United States v. United Mine Workers of America, 330 U.S. 258, 67,
S.Ct. 677, 91 L.Ed. 884 (1947) …………………………………………………………………12,13

### SECONDARY SOURCES

7 Moore's Fed. Practice P 65.02(4) ………………………………………………………………12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| RACHEL LYNN MAGLIULO, MATTHEW SHEA WILLIS, AND KIRSTEN WILLIS HALL | CIVIL ACTION NO. 3:21-cv-02304 |
| VERSUS | JUDGE DOUGHTY |
| EDWARD VIA COLLEGE OF OSTEOPATHIC MEDICINE | MAGISTRATE JUDGE MCCLUSKY |

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR CONTEMPT
FOR VIOLATION OF TEMPORARY RESTRAINING ORDER**

NOW INTO COURT, through undersigned counsel, come Plaintiffs, Rachel Lynn Magliulo, Matthew Shea Willis, and Kirsten Willis Hall (hereinafter collectively the "Students"), who offer the following memorandum in support of their Motion for Contempt for Violation of Temporary Restraining Order(Doc. No. 19):

**I       Background Facts**

This Honorable Court is no doubt well-acquainted with the facts of this case, having issued its Temporary Restraining Order (Doc. No. 19) ("TRO") less than one week ago, on August 17, 2021. In pertinent part, the Temporary Restraining Order provided:

> **IT IS FURTHER ORDERED** that Edward Via College of Osteopathic Medicine along with its directors, officers, employees, administrators, professors and teachers are hereby ENJOINED and RESTRAINED from retaliating against, or, discriminating against Plaintiffs for filing this proceeding. (Doc. No. 19).

The ink had barely dried on the TRO when, on Friday, August 20, 2021, Nathan Kinnard, VCOM's Associate Dean of Student Affairs and Development, and the chief antagonist against the Students throughout this ordeal, sent an email to the entire student body ostensibly addressing the court's TRO, attacking the Students and issuing more discriminatory policies by VCOM

against the Students.  Mr. Kinnard's passive-aggressive email is indicative of his treatment of them throughout this entire process.  Below is the email Mr. Kinnard sent to the VCOM student body:

> **From:** Kinnard, Nathan <nkinnard@ulm.vcom.edu>
> **Sent:** Friday, August 20, 2021 9:12 AM
> **To:** Class2024lc <Class2024lc@ulm.vcom.edu>; Class2025lc <Class2025lc@ulm.vcom.edu>; VCOM-LC <VCOM-LC@ulm.vcom.edu>
> **Subject:** Responses to the rumors
>
> Student Doctors,
>
> I understand there has been a lot of rumors going around since the lawsuit was filed and students are concerned about the current news coverage in the papers. Although I cannot directly speak about ongoing litigation, I can dispel some of these rumors and false narratives that have spread through the student body.
>
> 1. No, the Department of Student Services is not in trouble and no one is in jeopardy of being fired. I'll just say thank you to those of you who have worried, however the majority of allegations made against Student Services were false and others were certainly exaggerated.
>
> 2. Yes, there have been changes to the schedule for Early Clinical Experiences (ECEs) that were to start in Blocks 2 and 6. Unfortunately, we are facing a dilemma: Louisiana has one of the highest numbers of new cases of Covid-19 and one of the lowest vaccination rates, the situation does not provide for a safe clinical experience for students who are not vaccinated or for patients. We would simply not be able to protect the potential patients or any unvaccinated students and so we were forced to cancel these. We are in hopes to have them available in Blocks 3 and 7.

    VCOM is however arranging for volunteer clinical outreach experiences for students. While these will not be a part of the required curriculum there will be opportunity for vaccinated students to volunteer.

3. Finally, I understand that many of you have voiced disapproval to the students engaged in the lawsuit; and that some have been unprofessional. I encourage you to remember that we are still a VCOM family, and unprofessional conduct toward any student is against VCOM policies and procedures. Try to remember the golden rule!!!

4. Finally so each of you are aware, VCOM has and will always seek to adhere to state law.

    VCOM was initially unaware Louisiana had such an antiquated law on the books regarding vaccination. VCOM sought to adhere to the initial feedback from the Attorney General's office, however, there has never been an effort from the Attorney General's office or by Liberty Counsel to contact VCOM administration prior to any of the letters or the lawsuit. There are those who wish to make this a political issue rather than a public health issue it is. As there were no examples to find on how this law had been enforced or interpreted before we are just seeking to comply with the law while assuring the safety of our students and employees.

    The Covid-19 Committee at VCOM had granted exemptions for the students prior to receiving the temporary restraining order, so we are

puzzled as to what there is to gain from the lawsuit now. We have not found any matter where this law has been enforced or challenged prior, so there is some uncertainty as to what, if any, changes will be needed. VCOM will of course be appealing the decision.

With the cancellation of the ECEs and

With allowing all students to choose their own PPC/OMM laboratory partners we are uncertain as to what the students want in order to be able to participate in the academic program equally.

Again VCOM had already provided exemptions for the all students requesting an exemption in the 8/6/2020 meeting.

Please be assured VCOM has and will always seek to comply with decisions made by the courts.

5. VCOM is hopeful that we will be able to arrange volunteer clinical experiences that are not a part of the curriculum. Most of our clinical partners will require vaccination and we are currently only able to identify elective volunteer activities for students who are vaccinated and not a risk to elderly or patients.

6. Finally, VCOM was sad to cancel the International experiences for fall but with the rise of Covid-Cases here in La. and in these countries where we normally travel to level 3 and level 4 warnings. So the risks were too great. In addition, with the increasing cases of the Delta variant, while symptoms and illness has been predominately mild in those vaccinated,

there could be delays in travel and in return to the U.S. (and long self-quarantines).  We hope you will volunteer for some of the upcoming outreach activities.



**Nathan Kinnard, M.Ed.**
*Associate Dean of Student Affairs and Development*
**Edward Via College of Osteopathic Medicine**
Edward Via College of Osteopathic Medicine
4408 Bon Aire Drive |  Monroe, LA 71203
Phone: (318) 342-7130
nkinnard@ulm.vcom.edu  |  www.vcom.edu

In his email, Mr. Kinnard makes the following statements (paragraphs numbers below correspond with those in Mr. Kinnard's email):

2. Blocks 2 and 6 were cancelled because of the Students, i.e., "We would simply not be able to protect the potential patients or any unvaccinated students and w we were forced to cancel these."  Mr. Kinnard lays the blame for VCOM being "forced" to cancel these blocks squarely at the feet of the Students, despite the fact that all prevailing research has shown that even those vaccinated are contracting and spreading the virus.  However, Mr. Kinnard claims that the "forced" cancellation was because of the "unvaccinated students."

2. In his email, Mr. Kinnard notes that "VCOM is however arranging for volunteer clinical outreach experiences for students.  While these will not be a part of the required curriculum there will be opportunity for **vaccinated**

        **students** to volunteer." This is clearly discrimination against the unvaccinated Students that was prohibited by this Honorable Court's TRO. Moreover, by Mr. Kinnard noting that "volunteer clinical outreach experiences" for which no academic credit will be given are available only for "vaccinated students" highlights that the cancellation of the Early Clinical Experiences blocks for which academic credit would be earned was solely the fault of the unvaccinated Students.

4. Although he started his email advising that he "cannot directly speak about ongoing litigation" Mr. Kinnard advises the student body that "VCOM was initially unaware Louisiana had such an antiquated law on the books regarding vaccination." In essence, Mr. Kinnard is attacking the basis for the Students' claim, suggesting that LSA-R.S. 17:170 is "antiquated" and thus, the Students in this case are backward in their thinking or reasoning; that their position is not to be respected or accorded any deference. Ever the legal scholar, Mr. Kinnard disregards the fact that LSA-R.S. 17:170 was amended by the Louisiana Legislature in 2015 and the language that underpins this case was not changed or altered. Perhaps what Mr. Kinnard regards and wants to convey and paint as "antiquated" is bedrock, long-standing, and/or fundamental. In short, there was no legitimate basis for Mr. Kinnard to use such a juvenile passive-aggressive attack on the Students. His real motivation was not to discuss the history of LSA-R.S. 17:170, but to turn the student body against the Students and try to convince them that their education was

being affected by an "antiquated" statute that is no longer reasonable, rational, viable or worthy of respect.

4. Mr. Kinnard again attacks the Students by continuing to undermine their motives and degrade the basis for their case: "There are those who wish to make this a political issue rather than a public health issue it is." Mr. Kinnard desires to turn the student body against the Students by suggesting that their motives are to be questioned.

4. Mr. Kinnard contends that, "The Covid-19 Committee at VCOM had granted exemptions for the students prior to receiving the temporary restraining order, so we are puzzled as to what there is to gain from the lawsuit now." Again, more discussion of the lawsuit from the man who opened the email cautioning that he could not speak directly to ongoing litigation. More concerning, however, is his indirect attack on the Students and their real motivation, since VCOM had already granted the exemptions. As this Honorable Court is well aware, and as it addressed at length in the ruling granting the TRO, VCOM's exemptions were burdened with conditions that created insurmountable obstacles to the Students being able to attend VCOM per Louisiana law.

5. Mr. Kinnard contends that "Most of our clinical partners will require vaccination and we are currently only able to identify elective volunteer activities for students who are vaccinated and not a risk to elderly or patients." The Students are not aware that any of VCOM's "clinical partners" currently require vaccinations from their providers. Mr. Kinnard admits as much by contending that they "will require" such, but yet he contends that VCOM is

"currently able" to offer these opportunities "for students who are vaccinated and not a risk to elderly or patients." Again, this is an attack on the Students, contending that their decision is based on an antiquated statute, the medical equivalent to treating sick patients with leaches, and that their backward, antiquated thinking makes them a risk "to elderly and patients." Mr. Kinnard pretends in this paragraph that the vaccinated are immune from COVID-19 and thus, are not a risk to the old and the sick; it is only the Students who callously do not care against these at risk groups. However, in the next paragraph, Mr. Kinnard notes that they are cancelling the International experiences for the fall, not just for the unvaccinated, but for all students. The question is if only the unvaccinated are at risk, then why cancel this program for all students??? Mr. Kinnard does admit in this paragraph what is widely known and reported, the vaccinated are contracting and spreading COVID-19, particularly the Delta variant.

The email from Mr. Kinnard is, in one sense, not surprising. That he would do it in defiance of this Honorable Court's TRO is. Mr. Kinnard has been the chief antagonist to the Students since this entire ordeal began. Below are some of the threats, intimidation and improper tactics used by Mr. Kinnard in his meetings with the Students prior to the Students seeking judicial relief:

- VCOM's President wrote the COVID-19 policy. He knows exactly what she is going to say in response to the Students dissent: withdraw. There are a lot of things she will work with the students on, but this is not one of them.

- Either get the vaccine or withdraw or VCOM will fail them and they cannot come back.

- If they leave VCOM, the likelihood of them getting in another medical school is "zero" except maybe in the Caribbean if they can afford it.

- Very rare for medical schools in the U.S. to accept someone who has been to another medical school.

- Their decision not to take the vaccine comes down to either a temporary withdrawal or VCOM will fail them because they cannot do the Standardized Patient block.

- If they fail the Standardized Patient block they will not even be able to get into the Caribbean.

- If they are not getting the vaccine, there is no reason for them to go forward.

- They have two options: (1) voluntary withdraw; or (2) fail because they cannot complete the Standardized Patient block.

- The process to fail them if they do not withdraw is simply not letting them do the Standardized Patient block.

- When told that LSU Medical School was not mandating the vaccine, Mr. Kinnard responded that LSU was one of the worst medical schools in the country and he would not be surprised if it lost its federal funding this year.

- The courts will never be with them, except maybe the local courts, but the local courts do not make decisions. The "big courts" they appeal to will uphold the decision of the CDC.[1]

- When the case gets to the Supreme Court they are not going to rule against the vaccine in a time of hysteria.

- VCOM is a private school and can do whatever it wants.

- Even though the vaccine is not mandated and they do not have to have it, they cannot finish their program at VCOM without it. Regardless of "all the legal mumbo jumbo" all VCOM has to say is that the vaccine is not mandatory but you cannot graduate without it.

- Under the Emergency Use Authorization, all VCOM has to do is offer the option for rejection and advise what that entails. What it entails is that they have two (2) weeks to withdraw, defer or get the vaccine.

- VCOM suggested that they just throw in the towel – withdraw and VCOM will give them back their deposit and they can look for a school more compatible.[2]

---

[1] Recall that the CDC has never mandated vaccines as a condition of enrollment.
[2] This comment was made by a female VCOM employee in attendance at the meeting with Mr. Kinnard.

Page 11 of 14

- This is part of VCOM's culture and if the Students are not comfortable with it, they need to find somewhere else.

- Education law is different from regular law and all cases are on VCOM's side.

- The Supreme Court always rules in favor of educational institutions. Reference was made to a case where a student was "beaten to a tar" by a coach but the school "got off."

- If the Students have a religious belief, they are to be commended, but VCOM's policies are set and will not change.

- No Louisiana law supports a religious or medical exemption sought by the Students, particularly Ms. Magliulo.

## II    Legal Standard

When a person is adjudged in contempt of court, the court must first determine the nature of the proceeding, i.e., whether the contempt is civil or criminal. Criminal contempt proceedings seek to punish a party for defiance of judicial authority, whereas civil contempt proceedings seek to compel obedience of the court's order or to compensate the litigant for injuries suffered because of the disobedience. Lewis v. S. S. Baune, 534 F.2d 1115, 1119 (5th Cir. 1976) citing Norman Bridge Drug Company v. Banner, 5 Cir. 1976, 529 F.2d 822, 827; 7 Moore's Fed. Practice P 65.02(4).

The Students in a civil contempt proceeding bear the burden of establishing by clear and convincing evidence: 1) the TRO was in effect, 2) the TRO required certain conduct by VCOM and Mr. Kinnard, and 3) that VCOM and Mr. Kinnard failed to comply with the TRO. Am. Airlines, Inc. v. Allied Pilots Ass'n, 228 F.3d 574, 581 (5th Cir. 2000), citing Martin v. Trinity Indus., Inc., 959 F.2d 45, 47 (5th Cir.1992). The conduct complained of need not be willful so long as VCOM and Mr. Kinnard actually failed to comply with the TRO. Id. See also N.L.R.B. v. Trailways, Inc., 729 F.2d 1013, 1017 (5th Cir.1984).

The sanctions imposed in civil contempt proceedings, may be for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.  <u>Am. Airlines, Inc.</u>, 228 F.3d at 585, <u>citing</u>  <u>United States v. United Mine Workers of America</u>, 330 U.S. 258, 303–04, 67 S.Ct. 677, 91 L.Ed. 884 (1947), <u>Norman Bridge Drug Co. v. Banner</u>, 529 F.2d 822, 827 (5th Cir.1976).

Mr. Kinnard has repeatedly doubled-down in his interactions with the Students.  The threats, intimidation and improper tactics he has used as outlined above are just a sampling.  Mr. Kinnard has clearly taken this Honorable Court's TRO as an attack on his authority and he clearly does not intend to sit idly by and let that authority be eroded.  There was no legitimate basis for Mr. Kinnard's email. The passive-aggressive tone, his continued discrimination of the Students, his belittling and undermining of their position serves no useful purpose other than to attempt to turn the student body against them.  Likewise, his admonition to the student body not to act in an unprofessional manner towards the Students is disingenuous at best.  Mr. Kinnard's email does nothing more than sow the seeds for this discontent.  For these reasons, both VCOM and Mr. Kinnard should be held in contempt of court and sanctioned appropriately.

WHEREFORE, Plaintiffs, Rachel Lynn Magliulo, Matthew Shea Willis, and Kirsten Willis Hall, respectfully pray that after due proceedings Defendant, Edward Via College of Osteopathic Medicine, and Nathan Kinnard, its Associate Dean of Student Affairs and Development, be held in contempt of court and sanctioned appropriately for violating this Honorable Courts Temporary Restraining Order (Doc. No. 19).  Plaintiffs further pray that Defendant, Edward Via College of Osteopathic Medicine, and Nathan Kinnard, its Associate Dean of Student Affairs and Development, be cast with all costs incurred in the filing of the instant motion, along with

reasonable attorney's fees, and for all other relief to which they are or may be entitled, whether in law or in equity.

                Respectfully submitted:

                BREITHAUPT, DUBOS & WOLLESON, LLC
                1811 Tower Drive
                Monroe, Louisiana 71201
                Telephone:   (318) 322-1202
                Facsimile:    (318) 322-1984
                Email:         michael@bdw.law
                Email:         adam@bdw.law

                _____*/s/ Michael L. DuBos*_____
                Michael L. DuBos (#23944), T.A.
                Adam R. Karamanis (#39544)


## CERTIFICATION

I hereby certify that a copy of the above and foregoing has been duly served upon counsel of record on this 23rd day of August 2021 via the Court's EM/ECF filing system.

                _____*/S/ Michael L. DuBos*_____
                Michael L. DuBos