UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

RACHEL LYNN MAGLIULO,                    CIVIL ACTION NO. 3:21-cv-02304
MATTHEW SHEA WILLIS, and
KIRSTEN WILLIS HALL

VERSUS                                                   JUDGE DOUGHTY

EDWARD VIA COLLEGE OF              MAGISTRATE JUDGE MCCLUSKY
OSTEOPATHIC MEDICINE

### PLAINTIFFS MOTION FOR CONTEMPT AND SANCTIONS, AND SECOND AMENDED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND PERMANENT INJUNCITON

NOW INTO COURT, through undersigned counsel, comes Plaintiffs, Rachel Lynn Magliulo, Matthew Shea Willis, and Kirsten Willis Hall, who respectfully aver as follows:

### Overview

On or about August 3, 2021, plaintiffs, Rachel Lynn Magliulo, Matthew Shea Willis, and Kirsten Willis Hall, filed a Motion for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction to address VCOM's mandate of the COVID-19 vaccination.[1]   On August 5, 2021, Plaintiffs filed their First Amended Complaint for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction after defendant, VCOM, threatened Plaintiffs' right and ability to continue their medical education if they refused to receive a COVID-19 vaccination against their will.[2]

---

[1] *See* Document 1, Motion for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction.
[2] *See* Document 8, First Amended Complaint for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction.

On August 8, 2021, this Honorable Court granted plaintiff's Motion for Temporary Restraining Order, finding that: (1) the Plaintiffs had a substantial likelihood of success on the merits on the basis of La. R.S. 17:170, LA Const. Art. I, Sect. 8, and the PRFA; (2) Plaintiffs have shown irreparable harm because of their inability to complete curriculum requirements, disclosure of their "unvaccinated" status, and excessive restrictions; and (3) the Plaintiffs' potential harm of a constitutional violation, ability to complete their education, ethics charges and possible expulsion outweighs VCOM's interest.[3]

On August 23, 2021, after further actions by the defendant, plaintiffs filed their Motion for Contempt for Violation of Temporary Restraining Order.[4]

On October 19, 2021, a Consent Judgment was executed between the parties, whereby it was agreed that plaintiffs' would dismiss all claims against defendant and that: (1) Plaintiffs' requests for exemptions form the COVID-19 vaccine requirement for students attending VCOM were recognized as written dissents in accordance with LSA-R.S. 17:170E; (2) Plaintiffs shall remain subject to reasonable safety measures as promulgated by the Centers for Disease Control (CDC) for unvaccinated persons and the Institutions of Higher Education **to the extent that these reasonable safety measures and/or guidelines do not conflict with Louisiana State law**; and (3) Defendant, VCOM, will take **no discriminatory and/or retaliatory action against Plaintiffs** as a result of the exercise of their rights under LSA-R.S. 17:170E, including but not limited to, preventing Plaintiffs from completing their academic requirements at VCOM  and/or

---

[3] *See* Document 19, Memorandum Order.
[4] *See* Document 21, Plaintiffs' Motion for Contempt for Violation of Temporary Restraining Order.

referencing Plaintiffs' vaccination statuses or their exercise of their rights under LSA-R.S. 17:170E in any communication with a residency program.[5]

However, after this Consent Judgment was entered into by the parties, defendant instituted new policies taking effect on October 21, 2021.[6]  These policies violate the consent judgment entered into by the parties, because they violate Louisiana Constitution and Louisiana law, specifically the limits placed in La. R.S. 17:170.  Further, these policies are discriminatory against a class of people based upon a medical condition, as they place rules and penalties targeting only unvaccinated students, while vaccinated students do not have to abide by them.  Lastly, these policies are discriminatory and unreasonable as the science has shown that vaccinated persons carry the same viral load as unvaccinated persons.

## Jurisdiction

Because Defendant's actions have violated the terms of the consent judgment, Louisiana law, Plaintiffs' constitutional rights and could impact Plaintiffs' education and, subsequently, their employment as osteopathic doctors, Plaintiffs stand to be deprived of more than $75,000 in income.  Thus, this Honorable Court has jurisdiction over this action pursuant to the express dictates of 28 U.S.C.§ 1332(a)(1) in that the matter in controversy exceeds $75,000, exclusive of interest and costs, and Plaintiffs are citizens of the States of Louisiana and Florida, and Defendant is a citizen of the State of Virginia, where it was incorporated and where its principal place of business is located.

---

[5] *See* Document 35, Consent Judgment. (Emphasis added).
[6] *See* Exhibit "A": Guidance for VCOM Students (taking effect 10/21/2021)

## Venue

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) in that this judicial district is the district wherein a substantial part of the events giving rise to this action occurred and/or were threatened to occur.

## The Parties

### 1.

Petitioner, Rachel Lynn Magliulo, is a major and citizen of the State of Florida and a resident and domiciliary of the Parish of Ouachita.  Plaintiffs, Matthew Shea Willis and Kirsten Willis Hall, are majors and citizens of the State of Louisiana and residents and domiciliaries of the Parish of Lincoln.

### 2.

Made defendant herein is Edward Via College of Osteopathic Medicine, a foreign corporation incorporated under the laws of the State of Virginia, with its principal place of business in the State of Virginia.  Defendant, VCOM, may be served through its registered agent, Clara M. Sartor, 1503 North 19th Street, Monroe, LA 71201 and through its Counsel of Record, Mark Neal.

## Background Facts

### 3.

VCOM entered into a public-private "collaboration" (sometimes also referenced as a "cooperative endeavor agreement") with the University of Louisiana-Monroe ("ULM") to provide osteopathic medical education and research in a newly-constructed facility

located on State land on ULM's campus.  Specifically, VCOM entered into a sublease agreement for VCOM's campus at ULM and VCOM students, pursuant to the agreement, share access to ULM's facilities, including use of the ULM library, campus housing, campus parking, campus recreation facilities and fitness resources, entrance to ULM athletics and arts events and admission to ULM student clubs and activities.  VCOM students also can participate in ULM intramural clubs and other activities with ULM's student body. VCOM's first class started in 2020.

4.

As part of its collaborative partnership with ULM, VCOM entered into a Student and Support Fee Services Agreement for a Public/Private Collaboration with ULM.[7]  The agreement includes the following pertinent provisions:

- VCOM "shall have in place policies and procedures that are not in conflict with that of the University or the State of Louisiana…"

- VCOM shall not discriminate on the basis of religion in publication or in action.

- VCOM is a "Public/Private collaborative partner of the University"

- The agreement "shall be governed by and construed in accordance with the laws of the State of Louisiana without regard to conflict of laws principles that would require the application of any other law."

5.

Plaintiffs, Matthew Shea Willis and Kirsten Willis Hall, were part of VCOM's first class in 2020.  They are currently in their second year at VCOM.  Plaintiff, Rachel Lynn Magliulo, is in her first year at VCOM.

---

[7] *See* Exhibit "B": Student and Support Fee Services Agreement for a Public/Private Collaboration with ULM.

6.

On August 5, 2021, Plaintiffs filed their First Amended Complaint for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction after defendant, VCOM, threatened Plaintiffs' right and ability to continue their medical education if they refused to receive a COVID-19 vaccination against their will.

7.

On August 8, 2021, this Court granted plaintiff's Motion for Temporary Restraining Order, finding that: (1) the Plaintiffs had a substantial likelihood of success on the merits on the basis of La. R.S. 17:170, LA Const. Art. I, Sect. 8, and the PRFA; (2) Plaintiffs have shown irreparable harm because of their inability to complete curriculum requirements, disclosure of their "unvaccinated" status, and excessive restrictions; and (3) the Plaintiffs' potential harm of a constitutional violation, ability to complete their education, ethics charges and possible expulsion outweighs VCOM's interest.[8]

8.

On August 23, 2021, after further actions by the defendant, plaintiffs filed their Motion for Contempt for Violation of Temporary Restraining Order.[9]

9.

On October 19, 2021, a Consent Judgment was executed between the parties, whereby it was agreed that plaintiff's would drop all claims against defendant and that: (1) Plaintiffs requests for exemptions form the COVID-19 vaccine requirement for

---

[8] *See* Document 19.
[9] *See* Document 21.

students attending VCOM were recognized as written dissents in accordance with LSA-R.S. 17:170E; (2) Plaintiff shall remain subject to reasonable safety measures as promulgated by the Centers for Disease Control (CDC) for unvaccinated persons and the Institutions of Higher Education **to the extent that these reasonable safety measures and/or guidelines do not conflict with Louisiana State law**; and (3) Defendant, VCOM, will take **no discriminatory and/or retaliatory action against Plaintiffs** as a result of the exercise of their rights under LSA-R.S. 17:170E, including but not limited to, preventing Plaintiffs from completing their academic requirements at VCOM and/or referencing Plaintiffs' vaccination statuses or their exercise of their rights under LSA-R.S. 17:170E in any communication with a residency program.[10]

10.

However, after this Consent Judgment was entered into by the parties, defendant instituted new discriminatory policies taking effect on October 21, 2021.[11]

11.

Defendant implemented school policies whereby only unvaccinated students are required at all times to wear masks while indoors and on campus, as well as undergo weekly COVID-19 testing, while vaccinated students are subject to neither policy. The unvaccinated are further required to document, at a minimum, two (2) times per week their symptoms, or lack thereof, into MyHealthTracer. The unvaccinated are restricted from seeing patients who have or are suspected to have COVID-19; thus, impacting their

---

[10] *See* Document 35.
[11] *See* Exhibit "A".

education.  Further, the unvaccinated are penalized if they choose to travel to an area considered "high risk" or travel outside of the U.S.[12]

12.

The "Guidance" implemented by the school on October 21, 2021, violates the Louisiana Constitution and Louisiana Law, specifically La. R.S. 17:170.  Further, it is discriminatory and coercive against the unvaccinated as it continuously threatens that, any student not immunized against COVID-19, may be restricted in their ability to complete their course requirement.[13]

13.

As previously noted by this Court, as well as Attorney General Jeff Landry in his November 10, 2021 memorandum, the **only** caveat found in La. R.S. 17:170 for students who choose not to be immunized is that, in the event of an outbreak of the disease at the school, upon recommendation by the Office of Public Health, the school may exclude unimmunized students from campus "until the appropriate disease incubation period has expired or the unimmunized person presents evidence of immunization".[14] [15]

14.

While La. R.S. 17:170 may not prohibit schools from imposing other safety measures that they believe to be necessary to preserve the health of students, faculty, and staff, no statute or regulation specifically authorizes masking and testing protocols, any

---

[12] *Id.*
[13] *Id.*
[14] *See* Document 19.
[15] Exhibit "C": Attorney General Jeff Landry, Memorandum dated November 10, 2021.

such additional safety measures should be applied in a nondiscriminatory and non-punitive fashion.   As previously stated by this Court in the granting of Plaintiff's Motion for Temporary Restraining Order, "**policies that are so punitive that they defeat the right itself will not withstand scrutiny**".[16]

15.

Article 1, § 5, of the Louisiana Constitution, titled "Right to Privacy," provides: "Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy."  La. Const. art. I, § 5. It has been well settled for over thirty years that this provision establishes the affirmative right to decide whether to obtain or reject medical treatment, as expressly held by *Hondroulis v. Schuhmacher*, 553 So. 2d 398, 414 (La. 1989).  This right is not a mere limitation on state action.  *See Moresi v. State, Dept. of Wildlife and Fisheries*, 567 So.3d 1081, 1093 (La. 1990) (the omission of the expression "no law shall" in Article 1, § 5 "indicat[es] that the protection goes beyond limiting state action.").  *See also Snider v. Louisiana Med. Mut. Ins. Co.*, 2013-0579, p. 8 (La. 12/10/13); 130 So.3d 922, 930 ("The informed consent doctrine is based on the principle that every human being of adult years and sound mind has a right to determine what shall be done to his or her own body."

16.

In addition, the Louisiana Medical Consent Law expressly preserves the right to refuse medical care:

---

[16] *See* Document 19.

**Right of adult to refuse treatment as to his own person not abridged**

Nothing contained herein shall be construed to abridge any right of a person eighteen years of age or over to refuse to consent to medical or surgical treatment as to his own person.

La. R.S. 40:1159.7.  *See Lemann v. Essen Lane Daiquiris, Inc.*, 05-1095 (La. 3/10/06); 923 So. 2d 627, 635-36; *Roberson v. Provident House*, 576 So. 2d 992 (La. 1991); *Manuel v. State*, 95-2189, p. 17 (La. 3/8/96); 692 So. 2d 320, 331, n.10.[17]

17.

Louisiana law recognizes a cause of action for invasion of privacy based on the "right to be let alone." *Tate v. Woman's Hosp. Foundation*, 2010-0425 (La. 1/19/11); 56 So. 3d 194, 197 (emphasis added).  Violation of this right may occur in multiple ways, including "by unreasonably intruding on [a person's] physical solitude or seclusion" and by the "unreasonable disclosure of private facts." *Id*.  The reasonableness of the defendants' conduct is determined by balancing the conflicting interests at stake, the plaintiff's interest in protecting his privacy from serious invasions, and the defendants' interest in pursuing his course of conduct.  *Jaubert v. Crowley Post—Signal, Inc.*, 375 So. 2d 1386 (La. 1979).

18.

Moreover, on April 18, 2020, the FDA issued an Emergency Use Authorization authorizing the use of face masks for use by members of the general public to prevent the spread of the virus.[18]   21 USC 360 bbb-3 governs the use of medical products in

---

[17] This right is also codified in the Louisiana Advanced Directive statute, La. R.S. 40:1151.2, the Louisiana Military Advance Medical Directive statute, La. R.S. 40:1153.2, and the Nursing Home Bill of Rights, La. R.S. 40:2010.8(6).
[18]   https://www.fda.gov/media/137121/download?fbclid=IwAR2hRTHSn3diU4rHlyNTbaIy8plM1pCR6zc2bB8PI--5C3mjgqiQmzdEFko

emergencies.  This statute requires that those on whom the product is administered be informed that the product has been authorized for emergency use and of the significant known and potential benefits and risks of such use, and of the extent to which such benefits and risks are unknown[19]

19.

This statute further requires that those upon whom the product is administered be informed of **the option to accept or refuse administration of the product**, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.[20]

20.

Products used under the EUA are experimental and, thus, require the right to refuse. Under the Nuremburg Code, no one may be coerced to participate in a medical experiment. Louisiana citizens have a fundamental right to decide whether to obtain or reject medical treatment.  Said right is grounded in the state constitution, codified in statute, and long-recognized by the courts in the context of informed consent[21] and the tort of invasion of privacy.[22]

---

[19] 21 USC 360 bbb-3(e)(1)(A)(ii)(I) and (II)

[20] 21 USC 360 bbb-3(e)(1)(A)(ii)(III)

[21] See La. Const. art. I, § 5; La. R.S. 40:1159.7; *Hondroulis v. Schuhmacher*, 553 So. 2d 398, 414 (La. 1989) (holding that Article 1, § 5 establishes an "affirmative" right to decide whether to obtain or reject medical treatment) and its progeny; See also, *Snider v. Louisiana Med. Mut. Ins. Co.*, 2013-0579, p. 8 (La. 12/10/13); 130 So.3d 922, 930 ("The informed consent doctrine is based on the principle that every human being of adult years and sound mind has a right to determine what shall be done to his or her own body."; See also *Lemann v. Essen Lane Daiquiris, Inc.*, 05-1095 (La. 3/10/06); 923 So.2d 627, 635-36 ("Louisiana recognizes the right of an adult to refuse to consent to medical or surgical treatment of his own person.").

[22] *See Roshto v. Hebert*, 439 So. 2d 428, 430 (La. 1983) ("The right of privacy involves the basic right of a person to be let alone in his private affairs."); *Tate v. Woman's Hosp. Found.*, 2010-0425 (La. 1/19/11); 56 So. 3d 194 ("The tort of invasion of privacy is directed at redressing the damage which an individual suffers when legally recognized elements of his right to privacy have been violated").

21.

Therefore, VCOMs policies do not follow the laws governing the Emergency Use Authorization, and further violate the fundamental right of Louisiana citizens to decide whether to obtain or reject medical treatment.

22.

Defendant claims that the policies included in their Guidance for VCOM Students are in line with the safety measures as promulgated by the CDC for Institutions of Higher Education (IHE), and that "VCOM will continue to follow the CDC guidelines for institutes of higher education, based upon evidence-based medical data."[23]

23.

However, this is incorrect as, according to the CDC, it is advised that those who are fully vaccinated should wear a mask indoors in public.[24]

24.

The CDC further advises that even in IHEs where all students, faculty and staff are fully vaccinated, that universal use of masks be implemented indoors in public areas of substantial or high transmission.[25]

25.

---

[23] *See* Exhibit "A".
[24] See "*When You've Been Fully Vaccinated*", CDC, Updated October 15, 2021 <https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html>.
[25] See "*Guidance for Institutions of Higher Education (IHEs)*", CDC, Updated November 4, 2021 < https://www.cdc.gov/coronavirus/2019-ncov/community/colleges-universities/considerations.html#:~:text=Given%20new%20evidence%20on%20the,schools%2C%20regardless%20of%20vaccination%20status.>.

Furthermore, according to the CDC, Ouachita Parish is listed as an area of high community transmission, and advises that, "Everyone in **Ouachita Parish, Louisiana** should wear a mask in public, indoor settings. Mask requirements might vary from place to place. Make sure you follow local laws, rules, regulations or guidance."[26]

26.

However, despite the clear guidance issued by the CDC for Institutions of Higher Learning, VCOM has chosen to implement a facially discriminatory policy against only those students whom are unvaccinated.

27.

According to this policy, unvaccinated students are required to wear face masks at all times while on campus, while vaccinated students are not.   Additionally, if an unvaccinated student is found not wearing a mask, that student is subject to multiple penalties/punishments, including, but not limited to, suspension, no longer being eligible to participate in the curriculum or any type of clinical or research activity or to be present on campus, a hearing before either the Professional and Ethical Standards Board or the Honor Code Council, which could potentially result in **expulsion**, as well as a permanent mark on the student's transcript for 'ethical violations', thereby potentially damaging future employment prospects.

---

[26] See "*COVID-19 Integrated County View*", 'Ouachita Parish, Louisiana', CDC, Updated November 17, 2021. <https://covid.cdc.gov/covid-data-tracker/#county-view|Louisiana|22073|Risk|community_transmission_level>.

28.

VCOM's policies also mandate that unvaccinated students are required to undergo COVID-19 testing every week in front of a tele-proctor and must report the results of this test every Monday morning before 8:30 am.

29.

Additionally, VCOM's policies place additional restrictions on the travel of **only unvaccinated students**.  For example, while vaccinated students are allowed to travel to 'high-risk areas for COVID-19' within the United States without facing any quarantine period or delay in the students' program, VCOM's policy dictates that "If not vaccinated and the student travels to high-risk areas for COVID-19, the student will only be allowed to return after a self-quarantine period, which may cause a delay in the student's program".

30.

VCOM's policies also dictate that it is against the policy to travel internationally for unvaccinated students only, and that any unvaccinated student who travels internationally will be required to quarantine for a "minimum of 10 days upon return and a negative COVID-19 test will be required prior to return to campus.  For students this is an unexcused absence and the opportunity to remediate work will not be provided.  The student will also be referred to Honor Code Council".  This policy only affects unvaccinated students, as vaccinated students who travel internationally are not given an unexcused absence and are still allowed the opportunity to remediate work.

31.

As previously noted above, VCOM's mask policy is clearly **not** in line with the guidance and advise provided by the CDC for Institutions of Higher Education.[27]

32.

On November 12, 2021, Plaintiff, Matthew Willis, received a letter from Interim Dean, Mark Sanders, informing him that complaints had been lodged against him by fellow students for his failure to wear a face mask as an unvaccinated student, and that these complaints would be heard by the Honor Code Council.[28]

33.

Mr. Willis was further informed that his failure to wear a face mask as an unvaccinated student was considered to be "unethical and/or unprofessional conduct and presents a danger to the health and welfare of VCOM employees and your fellow students", and that he would therefore be suspended immediately until a "Professional and Ethical Standards Board and/or Honor Code Council is held", and that while suspended, he would "no longer be eligible to participate in the curriculum or any type of clinical or research activity or be present on campus".[29]

---

[27] See "*Guidance for Institutions of Higher Education (IHEs)"*, CDC, Updated November 4, 2021 < https://www.cdc.gov/coronavirus/2019-ncov/community/colleges-universities/considerations.html#:~:text=Given%20new%20evidence%20on%20the,schools%2C%20regardless%20of%20vaccination%20status.>.
[28] *See* Exhibit "D": Letter from Mark Sanders, Dated November 12, 2021.
[29] *Id*.

34.

On November 15, 2021, counsel for Plaintiffs sent a letter to defendant, notifying defendant of this Honorable Court's prior ruling, regarding the implementation of discriminatory and punitive testing protocols and safety measures and further reminding defendant of the Consent Judgment between the parties where it was agreed that VCOM would "take no discriminatory and/or retaliatory action against Plaintiffs as a result of the exercise of their rights under LSA-R.S. 17:170E, including, but not limited to preventing Plaintiffs from completing their academic requirements at VCOM and/or referencing Plaintiffs' vaccination statuses or their exercise of their rights under LSA-R.S. 17:170E in any communication with a residency program."[30]

35.

Plaintiffs further requested that VCOM rescind their discriminatory policies requiring **only unvaccinated** students to wear masks at all time and requiring **only unvaccinated** students to be subjected to weekly COVID-19 testing.[31]  Plaintiffs further requested that Matthew Shea Willis be immediately reinstated, as it was facially apparent that Mr. Willis being suspended from school and facing potential expulsion for the failure to wear a face mask was precisely the type of punitive policy this Court previously held "will not withstand scrutiny".[32]

---

[30] *See* Exhibit "E", Letter to Defendant's Counsel, Dated November 15, 2021.
[31] *Id.*
[32] *Id.*

36.

On November 17, 2021, counsel for plaintiffs received a letter from counsel for defendant, claiming that defendant is in 'absolute compliance' with both the consent judgment and CDC guidelines.[33]

37.

Defendant further threatened that if a claim is brought by the plaintiffs before the Court and is ultimately dismissed, that plaintiffs would "**face disciplinary actions as there is no retaliatory protection against the filing of a clearly frivolous claim**".[34]

38.

Defendant further stated that plaintiff, Matthew Willis, would continue to undergo both Professional and Ethical Standards Board and the Honor Code Council for his failure to "**abide by VCOM's mask policy for unvaccinated students**".[35]

39.

Defendant also provided that Mr. Willis' attorney would not be allowed to attend any such hearing, and that his attorney would further "**not be permitted access to the buildings**".[36] [37]

---

[33] *See* Exhibit F, Letter from Mark J. Neal, dated November 17, 2021.
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] Mr. Willis has now been reinstated; however, he missed a week of education and work during the time he was suspended.

## **Controlling Law**

40.

LSA-R.S. 17:170, prescribes the requirements for persons entering schools, including colleges in the State of Louisiana.  Specifically, LSA-R.S. 17:170E expressly provides:

> E. No person seeking to enter any school or facility enumerated in Subsection A of this Section shall be required to comply with the provisions of this Section if the student or his parent or guardian submits either a written statement from a physician stating that the procedure is contraindicated for medical reasons, **or a written dissent** from the student or his guardian is presented. (Emphasis added).

*Notably, this subsection does not limit the student's basis for opting out of the vaccination requirement to objections based on religious beliefs;* rather, Subsection E merely requires that the student submit a "written dissent" to receiving the vaccination without requiring the student to state the reason for the dissent and without allowing the institution to evaluate and opt whether to accept or reject the student's dissent.

41.

LSA-R.S. 17:170F strikes a balance between those opting out of a vaccination and the general health of the student population by providing that:

> F. In the event of an outbreak of a vaccine-preventable disease at the location of an educational institution or facility enumerated in Subsection A of this Section, the administrators of that institution or facility are empowered, upon the recommendation of the office of public health, to exclude from attendance unimmunized students and clients until the appropriate disease incubation period has expired or the unimmunized person presents evidence of immunization.

42.

As previously noted by this Court, as well as Attorney General Jeff Landry in his November 10, 2021 memorandum, the **only** caveat found in La. R.S. 17:170 for students who choose not to be immunized is that in the event of an outbreak of the disease at the school, upon recommendation by the Office of Public Health, the school may exclude unimmunized students from campus "until the appropriate disease incubation period has expired or the unimmunized person presents evidence of immunization".[38] [39]

43.

While La. R.S. 17:170 does not prohibit schools from imposing other safety measures that they believe to be necessary to preserve the health of students, faculty, and staff, and no statute or regulation specifically authorizes masking and testing protocols, any such additional safety measures should be applied in a nondiscriminatory and non-punitive fashion.  As previously stated by this Court in the granting of Plaintiff's Motion for Temporary Restraining Order, "**policies that are so punitive that they defeat the right itself will not withstand scrutiny**".[40]

44.

Furthermore, Article 1, § 5, of the Louisiana Constitution, titled "Right to Privacy," provides: "Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy."  La. Const. art. I, § 5. It has been well settled for over thirty years that this provision establishes

---

[38] *See* Document 19.
[39] Exhibit "C".
[40] *See* Document 19.

the affirmative right to decide whether to obtain or reject medical treatment, as expressly held by *Hondroulis v. Schuhmacher*, 553 So. 2d 398, 414 (La. 1989).  This right is not a mere limitation on state action.  *See Moresi v. State, Dept. of Wildlife and Fisheries*, 567 So.3d 1081, 1093 (La. 1990) (the omission of the expression "no law shall" in Article 1, § 5 "indicat[es] that the protection goes beyond limiting state action.").  *See also Snider v. Louisiana Med. Mut. Ins. Co.*, 2013-0579, p. 8 (La. 12/10/13); 130 So.3d 922, 930 ("The informed consent doctrine is based on the principle that every human being of adult years and sound mind has a right to determine what shall be done to his or her own body."

45.

In addition, the Louisiana Medical Consent Law expressly preserves the right to refuse medical care:

**Right of adult to refuse treatment as to his own person not abridged**

Nothing contained herein shall be construed to abridge any right of a person eighteen years of age or over to refuse to consent to medical or surgical treatment as to his own person.

La. R.S. 40:1159.7.  *See Lemann v. Essen Lane Daiquiris, Inc.*, 05-1095 (La. 3/10/06); 923 So. 2d 627, 635-36; *Roberson v. Provident House*, 576 So. 2d 992 (La. 1991); *Manuel v. State*, 95-2189, p. 17 (La. 3/8/96); 692 So. 2d 320, 331, n.10.[41]

46.

Moreover, Louisiana law recognizes a cause of action for invasion of privacy based on the "right to be let alone." *Tate v. Woman's Hosp. Foundation*, 2010-0425 (La. 1/19/11);

---

[41] This right is also codified in the Louisiana Advanced Directive statute, La. R.S. 40:1151.2, the Louisiana Military Advance Medical Directive statute, La. R.S. 40:1153.2, and the Nursing Home Bill of Rights, La. R.S. 40:2010.8(6).

56 So. 3d 194, 197 (emphasis added).  Violation of this right may occur in multiple ways, including "by unreasonably intruding on [a person's] physical solitude or seclusion" and by the "unreasonable disclosure of private facts."  *Id*.  The reasonableness of the defendants' conduct is determined by balancing the conflicting interests at stake, the plaintiff's interest in protecting his privacy from serious invasions, and the defendants' interest in pursuing his course of conduct.  *Jaubert v. Crowley Post—Signal, Inc.*, 375 So. 2d 1386 (La. 1979).

47.

Furthermore, Article I, Section 3 and 12 of the Louisiana Constitution prohibit discrimination based on "physical condition."

§3. Right to Individual Dignity

Section 3. No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.

§12. Freedom from Discrimination

Section 12. In access to public areas, accommodations, and facilities, every person shall be free from discrimination based on race, religion, or national ancestry and from arbitrary, capricious, or unreasonable discrimination based on age, sex, or physical condition.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER

48.

Plaintiffs reallege, reaffirm and incorporate herein by reference the preceding paragraphs as if copied herein *in extenso.*

49.

Rule 65 of the Federal Rules of Civil Procedure provides that the Court may issue a temporary restraining order, a preliminary injunction, or both, in an action for injunctive relief. It is well-settled that injunctive relief shall be issued in cases where irreparable injury, loss or damage may otherwise result, or in other cases specifically provided by law.

50.

A party seeking a temporary restraining order or preliminary injunction under Rule 65 must show: (i) a substantial likelihood of success on the merits; (ii) the movant will suffer irreparable injury without the injunction; (iii) the threatened injury outweighs the threatened harm to the party against whom the injunction is sought; and (iv) granting the injunction will not disserve the public interest.  See Lakedreams v. Taylor, 932 F.2d 1103, 1107 (5th Cir. 1991).

51.

Plaintiffs will succeed on the merits, as VCOM's COVID-19 policy has been applied in a clearly discriminatory and punitive fashion as it requires only unvaccinated students to wear masks, in direct contradiction to the CDC guidance for Institutions of Higher Education (IHE), which VCOM claims to be following, and further requires only unvaccinated students be subject to weekly COVID-19 testing and reporting.

52.

Furthermore, as noted by the CDC Director Rochelle P. Walensky, MD, MPH, the Delta variant of COVID-19 contains high viral loads, suggesting "an increased risk of

transmission and raised concern that, unlike with other variants, vaccinated people infected with Delta can transmit the virus."[42]

53.

This was further echoed by Louisiana Governor John Bel Edwards during his August 2, 2021 news conference, in which he emphasized that the COVID-19 vaccines do not prevent transmission, and that both vaccinated and unvaccinated people carry the same viral load, stating: "Based on recent CDC data, vaccinated people who do get infected have just as much virus in their systems as unvaccinated people, meaning they can likely spread the virus simply because of the power of the Delta variant."  The Governor's top health advisor, Dr. Joseph Kanter, added: "If you are fully vaccinated and do become infected, then you can still relatively transmit the virus" and that "you will have just as much virus in your body as the early days of the pandemic as someone who was unvaccinated."[43]  Governor Edwards issued a subsequent proclamation stating the same.[44]

54.

Furthermore, plaintiffs show that this policy has clearly been applied in a punitive manner, as plaintiff, Matthew Willis, an unvaccinated student attending VCOM, was notified that due to his alleged failure to wear a mask as an unvaccinated student, that he was suspended from attending VCOM, that he was no longer eligible to participate in the curriculum or any type of clinical or research activity or to be present on campus.  Mr.

---

[42] See "*Statement from CDC Director Rochelle P. Walensky, MD, MPH on Today's MMWR*", dated July 30, 2021, https://www.cdc.gov/media/releases/2021/s0730-mmwr-covid-19.html
[43] Gov. Edwards Press Conference, 8/02/2021, LOUISIANA PUBLIC BROADCASTING, https://www.youtube.com/watch?v=UzxWZ8qe0oU (last visited November 19, 2021).
[44] See Proclamation Number 137 JBE 2021, "*COVID-19 PUBLIC HEALTH EMERGENCY MITIGATION MEASURES STATEWIDE MASK MANDATE*", < https://gov.louisiana.gov/assets/Proclamations/2021/137-JBE-2021-StateofEmergencyOCR.pdf>.

Willis was further notified that he had to attend a hearing before the Honor Code Council.[45] Mr. Willis was also notified that regardless of the outcome of any such hearing, that his failure to wear a mask as an unvaccinated student will result in a permanent mark on his transcript, for ethical/professional violations, thereby potentially damaging future employment prospects.[46] [47]

55.

As has been clearly demonstrated, any policy such as the one implemented against exclusively unvaccinated students by VCOM, is clearly discriminatory.  Furthermore, it is clear that VCOM is discriminating against students based on their medical condition, because while vaccinated students are permitted to not wear masks without any fear of retribution by VCOM, unvaccinated students, such as Mr. Willis, are not only not permitted to not wear a mask, but face threats of **suspension, expulsion** and **damage** to their future employment prospects.

56.

Granting Plaintiffs' request for injunctive relief will serve their interests as well as public interests by preserving the individual liberty sought to be protected by LSA-R.S. 17:170E and by preserving Louisiana's strong stand on religious freedom as found in the Louisiana Constitution of 1974 and the laws of the State of Louisiana.

---

[45] As indicated above, Mr. Willis was reinstated following the hearing, but did miss one week of education and course work.

[46] See Exhibit "G", (Mr. Willis was advised that this suspension would not be on his transcript.  He subsequently received a letter advising that he suspension and Honor Code Council findings would not be on his transcript or dean's letter as long as there are no further violations of VCOM policy).

57.

Accordingly, Plaintiffs are entitled to injunctive relief prohibiting, restraining and enjoining Defendant from mandating that Plaintiffs, as unvaccinated students, be forced to wear masks while on campus, undergo weekly COVID-19 testing as a condition of enrollment at VCOM, and forcing mandatory reporting into MyHealthTracer, and further prohibiting, restraining and enjoining Defendant, VCOM, from retaliating against, coercing, threatening or discriminating against Plaintiffs for availing themselves of their right not wear masks while on campus and undergo weekly COVID-19 testing and reporting against their will.

58.

Specifically, Plaintiffs are entitled to the entry of a Temporary Restraining Order prohibiting, restraining and enjoining any action by VCOM to mandate that Plaintiffs, as unvaccinated students, be forced to wear masks while on campus, and be forced to undergo weekly COVID-19 testing as a condition of enrollment at VCOM and forcing mandatory reporting into MyHealthTracer, and further prohibiting, restraining and enjoining Defendant, VCOM, from retaliating against, coercing, threatening or discriminating against Plaintiffs for availing themselves of their right not to wear masks while on campus and undergo weekly COVID-19 testing and forcing mandatory reporting into MyHealthTracer against their will.

59.

Plaintiffs have provided notice to Defendant of their intent to apply for and seek the instant Temporary Restraining Order by delivering/transmitting a copy of the instant Complaint to:

(a)     Defendant, Edward Via College of Osteopathic Medicine, through its attorney of record, Mark Neal, 2485 Tower Drive, Suite 7, Monroe, LA 71201;

(b)     Mark Neal, Counsel for Defendant, Edward Via College of Osteopathic Medicine, via e-mail, 2485 Tower Drive, Suite 7, Monroe, LA 71201.

## APPLICATION FOR PRELIMINARY INJUNCTION

60.

Plaintiffs reallege, reaffirm and incorporate herein by reference the preceding paragraphs as if copied herein *in extenso*.

61.

Plaintiffs request that a hearing be set on their request for a Preliminary Injunction, and that after due proceedings thereon are had, Plaintiffs request the issuance of a Preliminary Injunction restraining and enjoining Defendant from mandating that Plaintiffs as unvaccinated students, be forced to wear masks while on campus and undergo weekly COVID-19 testing as a condition of enrollment at VCOM and forcing mandatory reporting into MyHealthTracer and further prohibiting, restraining and enjoining Defendant, VCOM, from retaliating against, coercing, threatening or discriminating against Plaintiffs for availing themselves of their right not to wear masks

while on campus and undergo weekly COVID-19 testing and forcing mandatory reporting into MyHealthTracer against their will.

## APPLICATION FOR PERMANENT INJUNCTION

62.

Plaintiffs reallege, reaffirmm and incorporate herein by reference the preceding paragraphs as if copied herein *in extenso.*

63.

Plaintiffs are entitled to and request a trial on the merits on all of VCOM's discriminatory COVID-19 policies, following which they request that this Honorable Court enter a Permanent Injunction prohibiting, restraining and enjoining Defendant from mandating that the plaintiffs submit to medical treatment against their will including, but not limited to, that Plaintiffs, as unvaccinated students, be forced to wear masks while on campus and undergo weekly COVID-19 testing as a condition of enrollment at VCOM and forcing mandatory reporting into MyHealthTracer.  Plaintiffs further request that this Honorable Court enter a Permanent Injunction prohibiting, restraining and enjoining Defendant from restricting the travel of unvaccinated students both domestically and internationally with the fear of disciplinary action, and further prohibiting, restraining and enjoining Defendant, VCOM, from retaliating against, coercing, threatening or discriminating against Plaintiffs for availing themselves of their right to decide whether to obtain or reject medical treatment and not to be discriminated against by, among other things, being forced to wear masks due to their vaccination status, while on campus and undergo weekly COVID-19 testing, forcing mandatory reporting

into MyHealthTracer against their will, and restricting the travel of unvaccinated students both domestically and internationally with the fear of disciplinary action.

## MOTION FOR CONTEMPT AND SACTIONS

64.

Plaintiffs reallege, reaffirmm and incorporate herein by reference the preceding paragraphs as if copied herein *in extenso.*

65.

A consent order, while founded on the agreement of the parties, is nevertheless a judicial act, enforceable by sanctions including a citation for contempt. A party may be held in contempt if he violates a definite and specific court order requiring him to perform or refrain from performing a particular act or acts with knowledge of that order. The civil contempt sanction is coercive rather than punitive and is intended to force a recalcitrant party to comply with a command of the court.[48]

66.

In a civil contempt proceeding, the movant must prove by clear and convincing evidence: "(1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order."[49] Once the movant has shown a prima facie case, the burden falls on the violating party to "show either mitigating circumstances that might cause the district court to withhold the exercise of its contempt power, or substantial compliance with the consent order."[50]

---

[48] *Little Tchefuncte River Association v. Artesian Utility Company, Inc.*, 155 F.Supp. 3d 637 (E.D. La. 2015), citing *Whitfield v. Pennington*, 832 F.2d 909, 913 (5th Cir.1987).
[49] *Petroleos Mexicanos v. Crawford Enters.*, 826 F.2d 392, 401 (5th Cir.1987).
[50] *Id.* at 401; *Whitfield*, 832 F.2d at 914.

67.

"Courts have ... the inherent authority to enforce their judicial orders and decrees in cases of civil contempt. Discretion, including the discretion to award attorneys' fees, must be left to the court in the enforcement of its decrees."[51]

68.

Penalties for civil contempt may be coercive, where the purpose is to make the recalcitrant party comply with the order, or they may be compensatory, where the purpose is to reimburse the injured party for the losses and expenses incurred as a result of the noncompliance.[52]

69.

As previously noted, on October 19, 2021, a Consent Judgment was executed between the parties, whereby it was agreed that plaintiffs' would dismiss all claims against defendant and that: (1) Plaintiffs' requests for exemptions form the COVID-19 vaccine requirement for students attending VCOM were recognized as written dissents in accordance with LSA-R.S. 17:170E; (2) Plaintiffs shall remain subject to reasonable safety measures as promulgated by the Centers for Disease Control (CDC) for unvaccinated persons and the Institutions of Higher Education **to the extent that these reasonable safety measures and/or guidelines do not conflict with Louisiana State law**; and (3) Defendant, VCOM, will take **no discriminatory and/or retaliatory action against Plaintiffs** as a result of the exercise of their rights under LSA-R.S. 17:170E, including but not limited to, preventing Plaintiffs from completing their academic requirements at

---

[51] *Cook v. Ochsner Foundation Hosp.*, 559 F.2d 270, 272 (5th Cir.1977).
[52] *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir.1976).

VCOM  and/or referencing Plaintiffs' vaccination statuses or their exercise of their rights under LSA-R.S. 17:170E in any communication with a residency program.[53]

70.

After this Consent Judgment was entered into by the parties, defendant instituted new policies taking effect on October 21, 2021, whereby only unvaccinated students are required at all times to wear masks while indoors and on campus, as well as undergo weekly COVID-19 testing, while vaccinated students are subject to neither policy.  The unvaccinated are further required to document, at a minimum, two (2) times per week their symptoms, or lack thereof, into MyHealthTracer.  The unvaccinated are restricted from seeing patients who have or are suspected to have COVID-19; thus, impacting their education.  Further, the unvaccinated are penalized if they choose to travel domestically to an area considered "high risk" or travel outside of the U.S.[54]

71.

VCOMs new policies are not in line with the safety measures promulgated by the CDC for Institutions of Higher Education (IHE), and therefore violates the Consent Judgment entered into by the parties.

---

[53] *See* Document 35, Consent Judgment. (Emphasis added).
[54] *See* Exhibit "A": Guidance for VCOM Students (taking effect 10/21/2021)

72.

Furthermore, VCOMs policies are in direct violation of Article I, Section 3[55] and 12[56] of the Louisiana Constitution prohibiting discrimination based on "physical condition", thereby violating the Consent Judgment, as these policies are applied solely to unvaccinated students.

73.

Lastly, Defendant's November 17, 2021 letter to Plaintiffs' counsel, threatening that if a claim is brought by the plaintiffs before the Court and is ultimately dismissed, that plaintiffs would "**face disciplinary actions as there is no retaliatory protection against the filing of a clearly frivolous claim**"[57], is in direct violation of the provision including in the Consent Judgment entered into by the parties, which states that "…VCOM, will take no discriminatory and/or retaliatory action against Plaintiffs as a result of the exercise of their rights under LSA-R.S. 17:170E, including but not limited to, preventing Plaintiffs from completing their academic requirements at VCOM…"[58]

74.

Accordingly, the "Guidance" implemented by VCOM on October 21, 2021, violates the Louisiana Constitution and Louisiana Law, specifically La. R.S. 17:170, thereby violating the terms of the Consent Judgment entered into by the parties.  Further,

---

[55] Right to Individual Dignity, Section 3. No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.
[56] Freedom from Discrimination, Section 12. In access to public areas, accommodations, and facilities, every person shall be free from discrimination based on race, religion, or national ancestry and from arbitrary, capricious, or unreasonable discrimination based on age, sex, or physical condition.
[57] *See* Exhibit "F".
[58] *See* Document 35.

it is discriminatory and coercive against the unvaccinated as it continuously threatens that any student not immunized against COVID-19, may be restricted in their ability to complete their course requirement.[59]

75.

Plaintiffs therefore request this Honorable Court find the Defendant in contempt for violating the Consent Judgment previously entered into by the parties, and further ask that Defendant be appropriately sanctioned for their failure to comply with the Consent Judgment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Rachel Lynn Magliulo, Matthew Shea Willis and Kirsten Willis Hall, respectfully pray:

a. That citation be issued so that Defendant may be cited and served with this Second Amended Complaint for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction;

b. That a Temporary Restraining Order issue herein prohibiting, restraining, and/or enjoining Defendant mandating that Plaintiffs, as unvaccinated students, be forced to wear masks while on campus and further prohibiting, restraining and enjoining Defendant, VCOM, from retaliating against, coercing, threatening or discriminating against Plaintiffs for availing themselves of their right not to wear a mask while on campus against their will;

---

[59] *See* Exhibit "A".

c.  That a Temporary Restraining Order issue herein prohibiting, restraining, and/or enjoining Defendant mandating that Plaintiffs, as unvaccinated students, be forced to undergo weekly COVID-19 testing and further prohibiting, restraining and enjoining Defendant, VCOM, from retaliating against, coercing, threatening or discriminating against Plaintiffs for availing themselves of their right not to undergo weekly COVID-19 testing against their will;

d.  That a hearing be set ordering Defendant, to show cause, if any it can, why a Preliminary Injunction should not issue prohibiting, restraining and enjoining Defendant mandating that Plaintiffs, as unvaccinated students, be forced to wear masks while on campus and undergo weekly COVID-19 testing as a condition of enrollment at VCOM and further prohibiting, restraining and enjoining Defendant, VCOM, from retaliating against, coercing, threatening or discriminating against Plaintiffs for availing themselves of their right not to wear masks while on campus and undergo weekly COVID-19 testing against their will;

e.  That after due proceedings, a Permanent Injunction be issued prohibiting, restraining and enjoining Defendant from mandating that the plaintiffs submit to medical treatment against their will including, but not limited to mandating that Plaintiffs be forced to wear masks while on campus and undergo weekly COVID-19 testing as a condition of enrollment at VCOM and further prohibiting, restraining and enjoining Defendant, VCOM, from retaliating against, coercing, threatening or discriminating against Plaintiffs for

availing themselves of their right to decide whether to obtain or reject medical treatment and to not to be forced to wear masks while on campus and undergo weekly COVID-19 testing against their will and restricting the travel of unvaccinated students both domestically and internationally with the fear of disciplinary action;

f.  Defendant not be permitted to take disciplinary and/or retaliatory actions against Plaintiffs for exercising their Constitutional rights in seeking legal redress for the issues noted above, as threatened by Defendant in their letter to Plaintiff's counsel dated November 17, 2021[60];

g.  For punitive and general damages for the violation of the consent judgment, Louisiana Law and Plaintiffs' Constitutional rights;

h.  Defendant be found in contempt for failure to comply with the Consent Judgment, and be appropriately sanctioned for their failure to comply with the Consent Judgment; and

i.  For any and all other relief to which Plaintiffs are or may be entitled, whether in law or in equity.

---

[60] Exhibit "F".

Respectfully submitted,

**BOLEN, PARKER, BRENNER, LEE & MILLER, LTD.**

BY:   _/s/Christina S. Slay_____
        CHRISTINA S. SLAY (#30729) T.A.
        KENNETH R. WHITTLE (#38640)
        709 Versailles Boulevard
        P. O. Box 11590
        Alexandria, LA 71315-1590
        Phone: (318) 445-8236
        Fax: (318) 443-1770
ATTORNEYS FOR PLAINTIFFS, RACHEL LYNN MAGLIULO, MATTHEW SHEA WILLIS, and KIRSTEN WILLIS HALL

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been duly served upon counsel of record on this 23rd day of November 2021, via the Court's EM/ECF filing system.

_____
**OF COUNSEL**